Horace Lee **EARL**, Plaintiff-Appellant,

v.

Clayton **BEAULIEU**, d/b/a Clayton's Garage, Defendant-Appellee.

No. 79–3984

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

June 26, 1980.

Rehearing and Rehearing En Banc Denied Aug. 21, 1980.

Tobe Lev, Central Florida Legal Services, Inc., Sanford, Fla., for plaintiff-appellant.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Clayton Beaulieu, pro se.

Before GEE, RUBIN and POLITZ, Circuit Judges.

GEE, Circuit Judge:

On this appeal Central Florida Legal Services, Inc., a "public interest" law firm, seeks to recover $1,020.00 in legal fees, calculated at the rate of $60.00 per hour, of Appellee Clayton Beaulieu, d/b/a Clayton's Garage. Beaulieu's present troubles began when he sold Plaintiff Horace Lee Earl a used car for $957.80—$500.00 down and the rest on time. The record strongly suggests that Earl systematically demolished the automobile, refused to make the deferred payments he had agreed to pay, and obtained the assistance of Central Florida Legal Services, Inc. when Clayton Beaulieu, d/b/a Clayton's Garage, tried to obtain relief of some kind on the sale agreement.

Defendant Beaulieu—who, by his pro se pleadings, brief and other offerings in his own defense which the record contains, is no more than literate—had failed to furnish Earl with a technically proper disclosure statement under the Truth-in-Lending Act, 15 U.S.C. Section 1601 et seq. Central Florida Legal Services, Inc. therefore descended upon him in the form of a five-page complaint alleging, among other things, such transgressions as are set out in the margin.[1] As these allegations are, in main, technically correct, Mr. Beaulieu in due course was taught the concrete worth of good grammar, of carefully screening his clientele, and of a thorough working knowledge of such edicts as 12 C.F.R. 226.8(b)(5). In the district court their combined value came to $220.00 damages, $24.00 costs, and attorney's fees of $100.00—represented by a Federal Judgment in favor of his customer, Plaintiff Earl. Not content with its triumph below, Central Florida Legal Services, Inc., continues to pursue the public interest by this appeal in which the sole relief sought is, to quote the brief's concluding instructions to our court,

The portion of the court's order of November 16, 1979, which awarded attorney's fees, must be vacated and the cause remanded with directions to award fees of $1,020.00 based upon the undersigned attorney's affidavit (R 1(I) 80), and the criteria set forth in Johnson[2] without the three additional criteria considered by the lower court. Additional attorney's fees and costs must also be awarded for rehearing and appeal pursuant to Sosa v. Fite, 498 F.2d 114, 122 (5th Cir. 1974).

---

1. COUNT I

11. The above-mentioned installment contract violated the provisions of the Consumer Credit Protection Act of 1968, 15 U.S.C. Section 1601 et seq. and Regulation Z, 12 C.F.R. Section 226.1 et seq., promulgated thereunder, in the following respects.

(a) The used car order violates 12 C.F.R. 226.6(a) and 226.8(c)(1)–(8) by using improper terminology, specifically the used car order discloses the finance charge as a "time-service charge," the "cash down payment" as a "deposit," the amount financed as a "total payment," the cash price as a "car sales price," and the deferred payment price as the "amount of contract."

(b) The used car order does not reveal an "annual percentage rate" in violation of 12 C.F.R. 226.8(b)(2).

(c) The used car order doesn't disclose the correct total number of payments, as eleven payments at $50.00 doesn't equal the "amount of the contract" of $567.80. The used car order doesn't clearly reveal the due dates of payment, also in violation of 12 C.F.R. 226.8(b)(3).

(d) The used car order doesn't mention any security interest to be retained on the vehicle contrary to the requirements of 12 C.F.R. 226.8(b)(5).

(e) Most of the disclosures are not clear and conspicuous but are blurry and confusing, violating the requirements of 12 C.F.R. 226.6(a). Specifically the payment schedule is unclear and confusing and the "time sale charge" is not printed more conspicuously than the rest of the disclosures contrary to the act's requirements.

12. As a result of the aforesaid violations, the Defendant is liable to Plaintiff in the amount of $220.00 or double the finance charge, plus reasonable attorney's fees and costs.

2. The reference is to our decision in Johnson v. Georgia Highway Express, Inc., 5 Cir., 488 F.2d 714 (1974).

Appellant having directed us to the *Johnson* criteria, we turn to them. Among them we find, numbered (8), "The amount involved and the results obtained." No moral issues, aggrieved classes, or pressing intangibles are involved here, only money damages, in a small—and foreseeably small—amount. In the course of the seventeen hours spent at the trial level in pursuing this tiny routine matter, plaintiff's attorneys prepared the following: a lengthy, multi-count, typed complaint meticulously detailing the deficiencies of Mr. Beaulieu's used car order when viewed as a T.I.L. disclosure statement; two sets of interrogatories to the foredoomed, pro se defendant; two sets of requests for admission; a motion and memorandum of law for summary judgment; a pre-trial stipulation, and so on and on. On this appeal we are presented with a twenty-one page brief and a reply brief directed to defendant's five-page pro se attempt at an appellee's brief, plus the above-quoted request for a remand for more proceedings, a demand for attorney's fees for the appeal, and so forth. Somewhere along the line, a certain sense of proportion has been lost as the unfortunate Mr. Beaulieu, like the proverbial butterfly, is broken on the wheel by the monstrous engines wheeled into place by the Congress to bear upon Clayton's Garage.

Concluding, we return to *Johnson*. In it we note its closing passage, emphasizing the great discretion that remains with the trial judge in these matters and the desirability of settlement where possible: [3]

> We are mindful of the difficult job of the trial judge in cases of this kind, and that in all probability his decision will be totally satisfactory to no one. The cross-appeals taken in this case are witness to the usual view of parties litigant to such an award. The trial judge is necessarily called upon to question the time, expertise, and professional work of a lawyer which is always difficult and sometimes distasteful. But that is the task, and it must be kept in mind that the plaintiff has the burden of proving his entitlement to an award for attorney's fees just as he would bear the burden of proving a claim for any other money judgment.
>
> In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees. Although a settlement generally leaves every litigant partially dissatisfied, so does a judicial award for attorney's fees.
>
> By this discussion we do not attempt to reduce the calculation of a reasonable fee to mathematical precision. Nor do we indicate that we should enter the discretionary area which the law consigns to the trial judge.

488 F.2d at 720.

We have written at such length on this matter only in deference to the legislative branch, which confided it to us in unmistakable terms. Bearing in mind Cromwell's suggestion to the Long Parliament, which we find apposite at this point,[4] we determine to conclude it finally if that lies within our powers.[5] For the services of Central Florida Legal Services, Inc., at trial and on appeal, we allow legal fees in a total and composite amount equal to the entire and undisputed damages recovered in its case. That amount is $220.00. Each party shall bear his own costs of appeal. The judgment of the court below is to this extent modified and, as so modified, it is

**AFFIRMED.**

---

3. The trial court found that plaintiff Earl rejected a reasonable settlement offer by Mr. Beaulieu and considered this as an additional factor to those of *Johnson* in fixing plaintiff's attorney's fees. This seems to us entirely appropriate.

4. You have sat too long here for any good you have been doing. Let us have done with you. In the Name of God, go!

5. Certiorari, of course, remains a possibility.