Elbert **ERKINS** and Samuel
Denson, Plaintiffs,

v.

Billy **BRYAN**, and Arthur Comer, and
George Bullard, and Charlie
Greene, Defendants.

**Civ. A. No. 80–180–N.**

United States District Court,
M.D. Alabama, N.D.

Nov. 27, 1984.

William I. Grubb, II, Eufaula, Ala., Thomas M. Jacobson, Milwaukee, Wis., Walter Kelly, Milwaukee, Wis., for plaintiffs.

Jerome A. Cooper, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

HOBBS, District Judge.

This action was commenced under Section 501(b) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 501 (1975), by two members of Local 7326, United Steelworkers of America, against defendants Billy Bryan, George Bullard, Arthur Comer, and Charlie Greene. Plaintiffs alleged that said defendants breached their fiduciary duties owed to Local 7326 by misappropriating strike funds for their own personal benefit in violation of 29 U.S.C. § 501(a). After conducting a three day trial without a jury, the Court concluded that the union was entitled to reimbursement from the defendants in the amount of $14,461.30, plus costs and interest.

This cause is now before the Court on the motion of plaintiffs for an award of attorneys' fees. Plaintiffs' attorneys contend that they are entitled to $305,381.25 as compensation for the services rendered to their clients in this law suit. Under LMRDA, 29 U.S.C. § 501(b), plaintiffs seek to recover these fees jointly and severally from defendants and from the United Steelworkers of America. The Court has reviewed plaintiffs' motion, accompanied by the time sheets of plaintiffs' attorneys and supporting affidavits, in light of the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and in light of *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Consideration of these decisions, together with the facts of the instant case,

leads the Court to conclude that plaintiffs are entitled to $42,000.00 in attorneys' fees.

### I. *Factual Background*

Elbert Erkins and Samuel Denson, plaintiffs in the above-styled action, were rank and file members of the United Steelworkers of America (International) and of its affiliate, Local 7326. Defendants Billy Bryan, George Bullard, Arthur Comer, and Charlie Green were also members of the International and Local 7326. During the relevant times herein, each defendant occupied at one time or another a position of fiduciary responsibility in Local 7326.

From December 1976 through May 1978, approximately three hundred members of Local 7326 engaged in a strike against their employer, the American Buildings Company of Eufaula, Alabama. This strike commenced at the expiration of the employment agreement between Local 7326 and the company. It was prompted by the company's demand for new terms in the collective bargaining agreement.

During the eighteen month strike, the International sent a total of $450,000 to the union local, along with instructions that the money be deposited into a special checking account which would contain only strike and defense funds. In order to qualify for benefits from this fund, a striker was required to perform work for the union, which usually meant walking a shift at the picket line. In return he would receive a weekly benefit of twenty (later thirty) dollars. A striker could also petition the strike committee to obtain money from the fund to pay bills or other obligations. To obtain this additional assistance, the striker would have to demonstrate an urgent need. The members of the union were instructed at the outset of the strike to exhaust their own financial resources and seek alternative sources of income (e.g., unemployment compensation) before petitioning the committee for assistance. During the course of the strike, literally hundreds of union members' bills were paid from the strike funds.

Despite vigorous efforts by the union, the strike was lost when the employees

voted not to be represented by the union at a decertification election. The results of this election became final when the union's objections to the decertification election were rejected by the National Labor Relations Board.

After losing the decertification election, Local 7326 was no longer authorized to represent the employees at the company's Eufaula plant. Since Local 7326 did not serve as the bargaining representative for employees of any other employer, a representative of the International was appointed as administrator to conclude the affairs of Local 7326. Following his appointment, Local 7326 ceased to exist for all practical purposes. Funds which were not expended during the strike or during the period when the local's affairs were being concluded by the administrator were eventually returned to the International.

Shortly after the conclusion of the strike, plaintiffs and other union members met with the administrator to discuss whether any of the defendants had misappropriated strike funds. Following this meeting plaintiffs remained suspicious that strike funds had been wrongly appropriated by defendants. They decided to conduct their own investigation. They traveled to Milwaukee, Wisconsin in June 1979 to secure the assistance of Mr. Thomas Jacobson, an attorney. At first plaintiffs were unable to meet the fee demands of Mr. Jacobson. However, they returned in October 1979 with sufficient funds to retain him. After travelling to Eufaula and conducting his own investigation, Mr. Jacobson discovered sufficient information to warrant contacting the International and demanding that the union file suit against the defendants. The International refused and instead forwarded the information provided to it by Mr. Jacobson to the Department of Labor for its consideration.

On May 1, 1980, plaintiffs sought leave from this Court to file suit against defendants under Section 501(b). In their verified proposed complaint, plaintiffs asserted that defendants committed numerous violations of their fiduciary obligations as officers or representatives of Local Union 7326. The verified proposed complaint requested an accounting and reimbursement of any misappropriated strike funds. The Court heard testimony from the plaintiffs and determined that the good cause requirement of Section 501(b) had been satisfied. The Court also found that plaintiffs had satisfied the statutory requirement of making a demand upon the International to bring suit against defendants. Because the International had refused to sue the defendants, this Court allowed plaintiffs to proceed with their complaint.

On June 12, 1980, the International filed a motion to intervene in this lawsuit for the special purpose of seeking to vacate this Court's order allowing plaintiffs to commence this action. The Court allowed the International to intervene for this limited purpose. When at a hearing plaintiffs, through their attorney, conceded that they were not union members at the time suit was filed, this Court held that plaintiffs lacked standing to bring this suit, and, therefore, withdrew its leave to file suit. 494 F.Supp. 732. Plaintiffs appealed, and the Court of Appeals reversed, holding that plaintiffs remained "members" of the union within the meaning of Section 501(b). *Erkins v. Bryan,* 663 F.2d 1048 (11th Cir. 1981), *cert. denied,* 459 U.S. 989, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982).

Plaintiffs also sought to bring a class action alleging that the union breached its duty of fair representation. This Court held such suit was time barred. Plaintiffs appealed to the Court of Appeals, which affirmed this ruling. Plaintiffs also were instrumental in having a federal suit brought against these same defendants for criminal conversion. After a lengthy trial, the defendants were acquitted of the criminal charges by a jury verdict.

After the conclusion of the criminal case, plaintiffs presented evidence in this civil suit over the course of three days regarding the travel expenses, strike benefits, and payments for personal expenses that defendants had received from the strike and defense fund. Out of the $450,000 allotted

for the three hundred members of Local 7326, the four defendants received thirty-one percent of the funds, or $140,000.

It is undisputed, however, that the four defendants remained as leaders of the strike for substantially its entire duration of eighteen months. Their duties as leaders of the strike precluded them from obtaining other work, whereas most of the other union members obtained other jobs within a few weeks or months of the beginning of the strike. Moreover, all of the defendants made many trips to other states in aid of the strike, and much of the money which they received from the defense fund was by way of reimbursement for such travel expenses.

The documentation presented by plaintiffs to substantiate charges of abuse and mismanagement by defendants included over two hundred checks that plaintiffs had selected to challenge as having been issued to one or more of the defendants in breach of their fiduciary duty. The Court notes that in order to secure this judgment against defendants, plaintiffs had to overcome difficult legal and factual obstacles that arose during the course of this protracted litigation.

## II. *Attorneys' Fees*

### A. *Extent of Union Liability*

■ A threshold question for this Court to consider in arriving at a reasonable figure for attorneys' fees is whether the Court will allow plaintiffs' award to exceed their recovery in the case. The question is . an important one in a case where plaintiffs claim attorneys' fees of $305,387.25, and their judgment amounted to only $14,461.30.

The statutory provisions governing attorneys' fees in actions brought under the Labor-Management Reporting and Disclosure Act is § 501(b) of the Act. This section provides that a trial judge

> may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate

such member for any expenses necessarily paid or incurred by him in connection with the litigation.

29 U.S.C. § 501(b). The International interprets this section to mean that the amount recovered by plaintiffs becomes the fund out of which the Court may allot "a reasonable part" as attorneys' fees, so that the fees can never exceed the recovery. The union argues that the legislative history supports its position. Moreover, the union argues that plaintiffs are seeking to impose on the union the obligation to pay hundreds of thousands of dollars in a law suit where it is not even a party. Its only participation has been by way of limited intervention (1) to oppose the bringing of the law suit *for its alleged use and benefit*, and (2) to oppose plaintiffs' efforts to collect staggering attorney fees from the union.

Plaintiffs argue that so restrictive an interpretation of the LMRDA provisions does not take the Act's broad purposes into account. LMRDA establishes fiduciary obligations for union officers who occupy positions of trust in a labor organization. 29 U.S.C. § 501(a). When these duties are violated, the Act provides criminal penalties for those who embezzle union funds. § 501(c). It also allows members of the union to file a civil suit for an accounting of union assets. § 501(b). Congress, in enacting LMRDA, remarked that

> A union treasury should not be managed as the private property of union officers, however well intentioned, but as a fund governed by fiduciary standards appropriate to this type of organization. The members who are the real owners of the money and property of the organization are entitled to a full accounting of all transactions involving their property.

Senate Comm. on Labor and Public Welfare, Labor-Management Reporting and Disclosure Act of 1959, S.Rep. No. 187, 86th Cong., 1st Sess., *reprinted in* 1959 U.S.Code Cong. & Ad.News 2318, 2324.

Whatever may be the merits of the proper interpretation of the intention of Congress, courts have consistently rejected the

unions' contentions that counsel fees should be limited to the amount of the monetary recovery. *Local No. 92 v. Norris*, 383 F.2d 735, 742 (5th Cir.1967); *Bakery and Confectionery Workers Int'l v. Ratner*, 335 F.2d 691 (D.C.Cir.1964); *Highway Truck Drivers & Helpers Local 107 v. Cohen*, 220 F.Supp. 735 (E.D.Pa.1963). Awards have been based on the theory that the union has benefitted from the results of the litigation initiated by plaintiff. Under this theory, the benefits of the litigation may accrue to unions that were not formal parties in the case, and may exceed the monetary recovery in cases where plaintiffs obtained a favorable, nonmonetary benefit for the union. *Id.* In no case, however, has the claim for attorney fees been so disproportionate to plaintiff's potential or actual recovery as in the instant case.

In *Bakery and Confectionery Workers Int'l v. Ratner*, 335 F.2d 691 (D.C.Cir. 1964), for example, the court referred to "the establishment of proper accounting procedures, the calling of a convention for membership expression and control, and the requirement of conformity by the officers with the International constitution" as possible benefits for the Bakery and Confectionery Workers that would merit an award of counsel fees. The monetary recovery, observed the court, may constitute a source for the payment of counsel fees, but the recovery is not the exclusive source for these fees. 335 F.2d at 696–97.

In the present case, the Court is of the opinion that plaintiffs conferred some benefit upon the union which is in excess of their monetary recovery. This lawsuit benefitted the International in two respects. First, it demonstrated to the union that the International's elaborate system for controlling expenditures of its general funds [see Declaration of Thomas Striegel] existed only on paper in regard to Local 7326. Defendants administered over $450,000 of union funds, but did not maintain adequate records of their expenditures, and misappropriated $14,461.30.

Second, the case pointed out the need for union officials to take their fiduciary obligations seriously, and vigorously to investigate charges of wrongdoing by local officials. Before plaintiffs instituted this action, they met with union officials and asked them to investigate plaintiffs' charges that defendants had abused their positions of trust in the local union. The International seemingly refused to investigate, and at all events refused to file suit against defendants, electing to forward the information it had received from plaintiffs to the Department of Labor. There is every reason to believe that if the International had elected to conduct its own internal investigation of the local and to file suit, the same results achieved by plaintiffs could have been attained at much less cost than the cost claimed by plaintiffs. To the extent, however, that the International allows itself to be put in a position where third parties enforce its fiduciary obligations and investigate charges against local officers, judicial decisions binding on this Court require that the International must be prepared to pay for all or a part of this outside help, even if the costs exceed the monetary recovery.

**B.** *Determination of Fee Award*

■ Having decided that plaintiff's attorneys are entitled to an award of fees, the Court must now determine the amount that counsel should receive. Plaintiffs have the burden of proving to the Court that they are entitled to an award of attorneys' fees. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974). They have submitted affidavits and time sheets in support of their claim that they should receive the sum of $305,381.25. Plaintiffs arrive at this figure by multiplying the hours that three of plaintiff's attorneys worked on this matter times the hourly rate for each attorney. This results in a total of $203,587.50. Plaintiffs then increase this figure by a factor of fifty percent, a fee enhancement that plaintiffs claim is appropriate in this case.

In evaluating plaintiff's motion, the Court has paid particular attention to

*Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *Hensley* teaches that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." 103 S.Ct. at 1939.

The figures that plaintiffs have submitted to the Court on this issue are as follows:

| | |
|---|---|
| Thomas M. Jacobson (1045.50 hrs at $125) | $130,687.50 |
| Thomas M. Jacobson (travel, 93 hrs at $25) | 2,325.00 |
| Walter F. Kelly (483 hrs at $125) | 60,375.00 |
| William I. Grubb (127.50 hrs at $80) | 10,200.00 |
| TOTAL (without 50% enhancement) | $203,587.50. |

Plaintiffs have also included itemizations of the time that counsel have spent on this case, along with supporting affidavits from local attorneys regarding plaintiffs' hourly rates. In these affidavits, the attorneys state their belief that plaintiffs' requests are reasonable and that local attorneys charge anywhere from $75 to $200 per hour for services similar to those performed by plaintiffs' counsel.

The Court believes that counteraffidavits and discovery could possibly form the basis for challenging whether all of counsel's time was reasonably spent, but this Court is mindful of the Supreme Court's admonition in *Hensley* not to turn the attorney fee petition into a second major trial. Already the time claimed for the fees of plaintiffs' attorneys is many times the amount in controversy. Accordingly, this Court will review plaintiffs' submissions in light of the Court's experience as a member of the local bar for approximately thirty years and as one who routinely has set fees for lawyers in litigation in this Court for the past several years, taking such aid as the affidavits filed by the parties afford.

The Court is of the opinion that if the only consideration in setting fees in this case is the number of hours reasonably spent by plaintiffs' attorneys times an appropriate hourly rate, plaintiffs would be entitled to an hourly rate of $90 per hour. Fees awarded by this Court have ranged from $40 an hour for beginning attorneys to as much as $100 an hour in a contingent fee case with excellent results for a skillful, prevailing attorney. This Court recognizes that plaintiffs were represented by able, dedicated attorneys.

After reviewing counsel's itemizations, the Court believes that some of the time listed was unnecessary, duplicative or poorly documented. For example, plaintiff had three attorneys present throughout the trial; defendants had one. But defendants are asked to pay for lawyers for their adversaries which clearly they could not have afforded for themselves. This Court recognizes that three attorneys at a trial may be helpful, but this Court has held that such a luxury as even two counsel at a trial should not be paid for by the losing party where defendants were represented by only one attorney—particularly is this true where defendants have very limited resources. *Joyner v. AAA Cooper Transportation Co.,* CA No. 82–884–N (M.D.Ala. Mar. 8, 1984), and see *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717 (5th Cir.1974). This Court is satisfied that much of the work of the attorneys outside the courtroom was also duplicative even where the attorneys sought to limit the amount of duplicative work.

A careful scrutiny might afford a basis for challenging some of the hours claimed on a basis other than duplicative hours. For example, the record of Mr. Kelly is itemized entirely in one hour increments, and the accompanying explanation in some cases does not seem to justify the amount of time claimed. But this Court is satisfied that the attorneys for plaintiffs have spent hundreds of hours productively on this case. If the amount in controversy and the results achieved justified fees based on the simple arithmetic of multiplying hours pro-

ductively employed, times a reasonable hourly rate for plaintiffs' attorneys, the Court would conclude that the fee should be no less than $95,000 to $100,000. The Court has reduced the amount that plaintiffs may require the union and/or the defendants to pay for plaintiffs' attorneys based on the results obtained and the amount in controversy.

*Johnson v. Georgia Highway Express,* 488 F.2d at 717, notes the factors that should be considered by the district court in arriving at an appropriate fee.

(1) *Time and labor required:* The Court has concluded that plaintiffs' attorneys spent more time than was reasonably required to prosecute this case successfully, but that plaintiffs' attorneys spent a thousand or more productive hours in representing their clients.

(2) *The novelty and difficulty of the questions:* The case presented a novel question on the issue of standing that was resolved in favor of plaintiffs on appeal. *Erkins v. Bryan,* 663 F.2d 1048 (11th Cir. 1981). In addition, plaintiffs' proof depended on the difficult chore of assembling and reviewing numerous checks in an effort to make sense out of the Local's chaotic financial records. Beyond the complexities of the accounting, the trial itself represented no novel or difficult questions.

(3) *The skill requisite to perform the legal service properly:* Attorneys for plaintiff demonstrated skill and tenacity in persevering in the representation of their clients, despite many obstacles which they had to overcome.

(4) *The preclusion of other employment by the attorney due to acceptance of the case.* Counsel's representation of plaintiffs did not create any conflicts of interest which hindered their ability to represent other clients, nor did it impose upon the time of attorneys involved to an unusual degree.

(5) *The customary fee.* The Court has answered this question in its discussion of an appropriate hourly rate.

(6) *Whether the fee is fixed or contingent.* The *Johnson* court employs this variable as an aid to the Court "in demonstrating the attorney's fee expectations when he accepted the case." 488 F.2d at 718. Plaintiffs have asked the Court to view the fee as contingent and add 50 percent to a generous hourly rate by way of enhancement. The Court recognizes some merit in the argument of plaintiffs' counsel that the $10,000 retainer fee (which, counsel inform the Court, was spent on expenses) should not alter the substantial contingent nature of the fee agreement in this case. A case in which an attorney is paid ten thousand dollars as a retainer is not entirely contingent, but in view of the hundreds of hours expended by plaintiffs' attorneys, the ten thousand dollars was clearly inadequate payment and the representation should invoke consideration similar to a contingent fee case. *Copeland v. Marshall,* 641 F.2d 880, 893 (D.C.Cir.1980) (en banc).

(7) *Time limitations imposed by the client or the circumstances.* The Court is not aware of any unusual time constraints in this matter.

(8) *The amount involved and the results obtained.* The Court is of the opinion that, considering the amount involved, no attorney could reasonably have believed that he would be entitled to a $300,000 fee in this case if his own client were paying the bill. The total amount of money received by all defendants from the strike fund was $140,000. Plaintiffs realized from the start that defendants were entitled to a large part of this money for work they performed during the strike and for urgent expenses which were paid for them as for other union members. The maximum possible recovery for plaintiffs at the outset of the trial was in the area of $50,000.00.

Plaintiffs' attorneys might well have anticipated that they would expose mismanagement in the union, which would benefit the International, and serve as additional justification for the suit. The level of mismanagement, however, was directly related to the amount of funds misused by defend-

ants. In this respect, plaintiffs should have been alerted that the amount of their attorney fees involving three attorneys with two of them from more than a thousand miles distance from the trial, was out of all proportion to the potential recovery.

Admittedly, plaintiffs had difficulty in marshalling the evidence to prove their case in large part because of the inadequate records and memories of defendants. Nevertheless, if the maximum possible recovery was somewhere in the area of $50,000, the actual results obtained, $14,461.30, were a good deal less.

If plaintiff succeeded on some of his claims, but failed to succeed on others, the time spent pursuing the unsuccessful claims is not compensable if the unsuccessful claims are not related to the successful ones. *Hensley*, 103 S.Ct. at 1940. On the issue of whether plaintiffs' claims were related, the Court will treat all claims as related. None of plaintiffs' time will be disallowed for unsuccessfully pursuing an unrelated claim.

(9) *The experience, reputation, and ability of the attorneys.* The quality of counsel's representation has already been noted in determining an appropriate hourly rate. This Court recognizes that plaintiffs were represented by able, dedicated attorneys.

(10) *The "undesirability" of the case.* The Court does not believe that counsel will suffer economic hardship resulting from their representation of plaintiffs in this matter, or that the case was "undesirable" except for the length of time from the filing of the suit to its conclusion and the travel involved for all of plaintiffs' attorneys.

(11) *The nature and length of the professional relationship with the client.* Plaintiffs' attorneys did not have a prior relationship with their clients.

(12) *Awards in similar cases.* Judgments in two similar cases have been roughly equivalent to plaintiffs' monetary judgment. In *Local No. 92 v. Norris*, 383 F.2d 735 (5th Cir.1967), plaintiffs obtained a judgment of $22,896.01, and received attorneys' fees of $15,729.47. In *Highway Truck Drivers v. Cohen*, 220 F.Supp. 735 (E.D.Pa.1963), plaintiff received a verdict of $24,921.44, and $38,000.00 in attorneys' fees.

The twelve factors listed above are not accorded equal weight in arriving at a reasonable fee. Under *Hensley*, "the most critical factor" used in evaluating the product of the attorneys' reasonable hours times a reasonable rate is the results obtained by plaintiff. 103 S.Ct. at 1941. In this case, the fee award has been primarily influenced by the fact that plaintiffs did not achieve a level of success that would make the hours reasonably expended a satisfactory basis for making the fee award. *Id.* at 1940. The Court in *Hensley* noted that where "plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." 103 S.Ct. at 1941.

For example, in *Earl v. Beaulieu*, 620 F.2d 101 (5th Cir.1980), a Truth-In-Lending Act case, plaintiff's recovery was $220, and plaintiff sought $1,020 for plaintiff's attorney fees. The court in *Earl* limited the attorney fees to the amount of the recovery; i.e., $220. The court emphasized that the basis for so limited an award was "the amount involved and the results obtained." *Id.* at 103.

In cases such as this one, where the fee awarded exceeds the amount of the judgment, the Court believes that there should be a relationship between the two. In *Pearson v. Colonial Financial Services, Inc.*, 530 F.Supp. 599 (1982), a case brought before this Court, plaintiff sought attorneys' fees from the losing party which were fifteen times her recovery. Plaintiff received an award of attorney fees in excess of her judgment, but this award was for $6,000 in fees to plaintiff's attorneys rather than the $31,594.00 which had been sought. In rejecting most of plaintiff's

claim for attorney fees, this Court made it clear that the primary reason was that the claimed fee was out of proportion to the amount in controversy and to the results obtained. *Id.* at 602.

In the present case, the union has made a strong argument based on legislative history that the union cannot be required to pay a fee in excess of the amount recovered. Judicial precedent deemed binding on this Court has held that the union can be required to pay in excess of the amount of the judgment. The Court notes, however, that plaintiffs are seeking attorneys' fees and costs which are more than twenty times the amount of the judgment. These fees and costs are $290,000.00 greater than the monetary benefit to the union, in a case that was allegedly brought for its benefit.

In ruling on plaintiffs' petition, this Court has tried to establish a correlation between the amount of the judgment and the amount awarded for attorneys' fees. If no such correlation is required, the fee to be awarded could become a devastating weapon with which to bludgeon settlements. 530 F.Supp. at 601. In a hypothetical case, an attorney could demand that a union pursue a claim against a former officer of a defunct local union. The union may know that the former officer is insolvent. It may also know that it would cost far, far more to pursue the claim than the claim is worth. Nevertheless, the union must sue the former union officer over even trivial amounts. This could hardly have been the intent of Congress, nor would it be in the public interest.

After a review of the legislative history of LMRDA, this Court has found no indication that Congress, in allowing third parties to enforce the fiduciary obligations of union officials, intended that these parties should hold such a club to coerce decisions of a labor organization. The union should be allowed to exercise its own judgment regarding the merits of a suit without the fear of being forced to pay staggeringly large attorneys' fees which are not related to the expected recovery. In light of these considerations, the Court will order, by sep-

arate judgment, that defendants and the union are jointly liable for attorneys' fees to plaintiffs in the amount of $42,000.00.