In re Evelyn R. ROBERTSON, Debtor.

Evelyn R. Robertson, Plaintiff,

v.

Darlene Strickland, Defendant.

Bankruptcy No. 04–BK–01991–JAF.
Adversary No. 04–277.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Aug. 29, 2005.

Bryan K. Mickler, for Plaintiff.

David B. Ferebee, for Defendant.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

JERRY A. FUNK, Bankruptcy Judge.

This proceeding came before the Court upon an amended complaint filed by Evelyn R. Robertson ("Plaintiff") alleging Darlene Strickland ("Defendant") violated the chapter 7 discharge injunction, the Truth in Lending Act ("TILA") (15 U.S.C. § 1601 *et seq.*), the Florida Deceptive and Unfair Trade Practices Act, the Home Ownership and Equity Protection Act of 1994 and the Florida usury law. The Court conducted a trial on April 19, 2005. In lieu of oral argument, the Court direct-

ed the parties to submit memoranda in support of their respective positions. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Plaintiff's mortgagee obtained a final judgment of foreclosure and set the sale of Plaintiff's home for October 6, 2003. Plaintiff contacted Ronald Evans ("Mr.Evans"), a mortgage broker, to assist her with refinancing her home. Mr. Evans could not obtain refinancing for Plaintiff by means of a conventional loan before the foreclosure date. Mr. Evans asked Defendant, the owner of Premier Title Group, Inc., to provide a private loan to Plaintiff. Premier Title Group primarily provides title services, closing services, and title insurance for those seeking or providing mortgages. Defendant was not in the business of extending loans and in fact had not extended a private loan before extending the loan to Plaintiff.

On October 3, 2003 Mr. Evans and Plaintiff went to Defendant's office to complete the transaction. Defendant did not attend the closing because of a prior engagement but she was represented. In preparation for the closing Defendant signed a Private Investor Disbursement dated October 3, 2003 and Plaintiff signed a Borrower Signature Authorization dated September 16, 2003. During the closing Plaintiff signed over her home to Defendant by signing a General Warranty Deed ("deed") in favor of Defendant. Plaintiff signed the deed in exchange for a loan of $20,000.00 from Defendant. Defendant did not disclose to Plaintiff credit terms or rescission terms as required by the Truth and Lending Act ("TILA") or the Home Ownership and Equity Protection Act of 1994 ("HOEPA") before or during the closing.

Defendant's representative tendered Mr. Evans a check for $18,798.37. Mr. Evans promptly sent the check to Plaintiff's mortgage company and Plaintiff remained in possession of her home. The loan terms required Plaintiff to pay Defendant $20,000.00 within sixty days. Upon payment of the loan, Defendant would tender the deed to Plaintiff.

On October 7, 2003 Plaintiff signed a Mortgage Broker Contract, a Good Faith Estimate and a Residential Loan Application. The Good Faith Estimate lists the transaction costs for the loan as follows: 1) $300.00 for a loan discount; 2) $500.00 for the mortgage broker fee; 3) $266.63 for the closing or escrow fee; 4) $25.00 for recording fees; 5) $70.00 for the mortgage note stamps; and 6) $40.00 for the intangible tax. The transaction costs for the loan totaled $1,201.63. After the closing, Plaintiff paid the $500.00 brokerage fee directly to Mr. Evans without notifying Defendant, thereby reducing the debt Plaintiff owes Defendant to $19,500.00.[1]

Mr. Evans intended to refinance Plaintiff's home in a relative's name before the sixty days expired. However, the refinancing never occurred. On February 29, 2004 (the "Petition Date") Plaintiff filed for chapter 7 bankruptcy relief. Plaintiff listed the $20,000.00 debt owed to Defendant as an unsecured claim. As of the Petition Date, the deed remained unrecorded in Defendant's possession. Defendant did not participate in Plaintiff's chapter 7 bankruptcy proceeding even though she knew Plaintiff filed for bankruptcy and knew she was listed as an unsecured creditor. On June 16, 2004 Plaintiff received her discharge.

---

1. The parties continue to reference the loan amount as $20,000.00.

In the months following the loan transaction, Defendant demanded Plaintiff repay the loan. Plaintiff did not repay the loan. In fact Plaintiff did not tender any payments to Defendant. On August 19, 2004 Defendant recorded the deed to Plaintiff's home and instructed Plaintiff to vacate the home. On August 24, 2004 Plaintiff filed a complaint commencing this adversary proceeding.

On September 9, 2004 Plaintiff filed for chapter 13 bankruptcy relief. On December 30, 2004 Defendant filed a secured claim in Plaintiff's Chapter 13 case, which the clerk's office designated as Claim 5. On February 15, 2005 Plaintiff filed an Objection to Claim 5. On February 18, 2005 Defendant filed a response. Based upon the similarity of issues, the Court combined the adversary proceeding with Plaintiff's Objection to Claim 5 in the Chapter 13 bankruptcy case. On August 25, 2005 the Court dismissed Plaintiff's Chapter 13 bankruptcy case based on Plaintiff's failure to make interim payments. Plaintiff's Objection to Claim 5 is therefore moot.

Plaintiff alleged in the amended complaint that Defendant's actions: 1) violated the chapter 7 discharge injunction pursuant to 11 U.S.C. §§ 524 and 727; 2) violated the Florida Deceptive and Unfair Trade Practices Act because Defendant engaged in equity skimming; 3) violated TILA by failing to disclose specific terms of the loan as required by 15 U.S.C. § 1638; 4) violated HOEPA by failing to disclose specific terms of the loan as required by 15 U.S.C. § 1639; 5) extended her right to rescind the transaction pursuant to 15 U.S.C.

§ 1635; and 6) resulted in criminal usury pursuant to Florida Statute § 687.071.

### CONCLUSIONS OF LAW

#### Count I—Violation of the Discharge Injunction

■ Plaintiff concedes in her Post Trial Memorandum that Defendant holds a mortgage on her home. The parties agree the mortgage qualifies as a secured debt and the lien survives the chapter 7 discharge. Accordingly, the Court will enter judgment in favor of Defendant as to Count I of the amended complaint.

#### Count II—Florida Deceptive and Unfair Trade Practices Act Violation

The Court found insufficient evidence to support count II of Plaintiff's amended complaint after hearing the evidence presented at trial. Therefore, the Court will enter judgment in favor of Defendant as to Count II of the amended complaint.

#### Count III—TILA Disclosure Violations

■ In 1968 Congress enacted TILA in order to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601; *see also Cooper v. First Gov't Mortgage & Investors Corp.*, 238 F.Supp.2d 50, 54 (D.D.C.2002) (citations omitted). Under TILA lenders are required to disclose credit terms clearly and conspicuously so that borrowers can fully understand the terms and costs of the transaction. 12 C.F.R. § 226.17(a)(1).[2]

---

**2.** (a) Form of disclosures.

(1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain

any information not directly related [FN 37] to the disclosures required under § 226.18. [FN 38] The itemization of the amount financed under § 226.18(c)(1) must be separate from the other disclosures under that section.

Plaintiff alleges in count III of the amended complaint that Defendant failed to disclose to Plaintiff the required credit terms pursuant to TILA.

■ Preliminarily, the Court must determine whether Defendant qualifies as a creditor for purposes of TILA.[3] Mr. Evans' classification as a mortgage broker is not disputed. Mr. Evans brokered the loan transaction between Plaintiff and Defendant. Therefore, Defendant qualifies as a creditor for purposes of TILA.

■ TILA governs a transaction by a creditor when four conditions are met: (1) the credit is extended to consumers; (2) the extension of credit is done regularly; (3) the credit is subject to a finance charge; and (4) the credit is for personal, family or household purposes. 12 C.F.R. § 226.1(c)(1).[4] The transaction between Defendant and Plaintiff meets all four conditions. Plaintiff qualifies as a consumer, which is a person to whom consumer credit is offered or extended. 12 C.F. R. § 226.2(a)(11).[5] The Court has already identified Defendant as a person who regularly extends consumer credit. At a minimum the $500.00 brokerage fee paid by Plaintiff constitutes a finance charge. 12 C.F.R. § 226.4(a)(3).[6] Finally, Plaintiff

[FN 37] The disclosures may include an acknowledgment of receipt, the date of the transaction, and the consumer's name, address, and account number.

[FN 38] The following disclosures may be made together with or separately from other required disclosures: the creditor's identity under § 226.18(a), the variable rate example under § 226.18(f)(1)(iv), insurance or debt cancellation under § 226.18(n), and certain security interest charges under § 226.18(o).

12 C.F.R. 226.17.

3. TILA defines a "creditor" as:

(a)(17)(i)A person (A) who regularly extends consumer credit [FN3] that is subject to a finance charge or is payable by written agreement in more than 4 installments (not including a down payment), and (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract.

[FN3] A person regularly extends consumer credit only if it extended credit (other than credit subject to the requirements of § 226.32) more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year. If a person did not meet these numerical standards in the preceding calendar year, the numerical standards shall be applied to the current calendar year. A person regularly extends consumer credit if, in any 12–month period, the person originates more than one credit extension that is subject to the requirements of § 226.32 *or one or more such credit extensions through a mortgage broker.*

12 C.F.R. § 226.2 (emphasis added).

4. (c) Coverage

(1) In general, this regulation applies to each individual or business that offers or extends credit when four conditions are met: (i) the credit is offered or extended to consumers; (ii) the offering or extension of credit is done regularly; [FN 1](iii) the credit is subject to a finance charge or is payable by a written agreement in more than 4 installments; and (iv) the credit is primarily for personal, family, or household purposes.

[FN 1] The meaning of "regularly" is explained in the definition of "creditor" in § 226.2(a).

12 C.F.R. § 226.1.

5. (a)(11) Consumer means a cardholder or a natural person to whom consumer credit is offered or extended. However, for purposes of rescission under §§ 226.15 and 226.23, the term also includes a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest.

12 C.F.R. § 226.2.

6. (a)(3) Special rule; mortgage broker fees. Fees charged by a mortgage broker (including fees paid by the consumer directly to the broker or to the creditor for delivery to the broker) are finance charges even if the creditor does not require the consumer to use a mortgage broker and even if the creditor does not retain any portion of the charge.

needed the loan for a personal, family or household purpose.

■■■■ The transaction between Defendant and Plaintiff qualifies as a closed-end transaction because Defendant did not anticipate repeated transactions with Plaintiff. 15 U.S.C. § 1602(i).[7] TILA requires a creditor to provide the credit disclosures to a borrower for a closed-end transaction before the credit is extended. 15 U.S.C. § 1638(b)(1); 12 C.F.R. § 226.17(b). Plaintiff did not sign any documents with the required TILA disclosures before the closing. 15 U.S.C. § 1638.[8] Plaintiff signed a Borrower Signature Authorization before the closing and Plaintiff signed the deed over to Defendant during the closing. Because none of the documents signed by Plaintiff before the closing included the required disclosures, Defendant violated 15 U.S.C. § 1638 of TILA.

12 C.F.R. § 226.4.

**7.** (i) the term "open end credit plan" means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. A credit plan which is an open end credit plan within the meaning of the preceding sentence is an open end credit plan even if credit information is verified form time to time.
15 U.S.C. § 1602.

**8.** Plaintiff contends she did not receive the following TILA disclosures required for a closed-end transaction.
Section 1638 of TILA provides for the following disclosures:
(a)(2)(A) The "amount financed", using that term, which shall be the amount of credit of which the consumer has actual use. This amount shall be computed as follows, but the computations need not be disclosed and shall not be disclosed with the disclosures conspicuously segregated in accordance with subsection (b)(1) of this section:
(i) take the principal amount of the loan or the cash price less downpayment and trade-in;

### Count V—HOEPA Disclosure Violations

■■ In 1994 Congress enacted HOEPA as an amendment to TILA. *Cooper v. First Gov't Mortgage and Investors Corp.*, 238 F.Supp.2d 50, 54 (D.D.C.2002) (citing Pub.L. 103–325 (amending TILA at 15 U.S.C. §§ 1601–02, 1604, 1610, 1639–41, 1648)). Congress intended for HOEPA to address "abusive practices in home mortgage lending" and to "provide borrowers with additional disclosures, in conspicuous type size, with respect to certain home mortgages." *Cooper*, 238 F.Supp.2d at 54 (citing 15 U.S.C. § 1639(a)(1)).

■■■■ Defendant also meets the definition of a creditor for purposes of HOEPA. A lender can qualify as a creditor under HOEPA by originating one or more mortgages referred to in section 1602(aa)

(ii) add any charges which are not part of the finance charge or of the principal amount of the loan and which are financed by the consumer, including the cost of any items excluded from the finance charge pursuant to section 1605 of this title; and
(iii) subtract any charges which are part of the finance charge but which will be paid by the consumer before or at the time of the consummation of the transaction, or have been withheld from the proceeds of the credit.
(3) The "finance charge", not itemized, using that term.
(4) The finance charge expressed as an "annual percentage rate," using that term. This shall not be required if the amount financed does not exceed $75 and the finance charge does not exceed $5, or if the amount financed exceeds $75 and the finance charge does not exceed $7.50.
(5) The sum of the amount financed and the finance charge, which shall be termed the "total of payments."
(6) The number, amount, and due dates or period of payments scheduled to repay the total of payments.
15 U.S.C. § 1638.

through a mortgage broker. 15 U.S.C. § 1602(f); 12 C.F.R. § 226.2(a)(17)(i). The transaction between Plaintiff and Defendant qualifies as a mortgage covered by HOEPA because Plaintiff secured the loan with her home for a purpose other than to finance the acquisition or initial construction of a dwelling and the annual percentage rate of the loan "exceeds by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit [was] received by the creditor." 15 U.S.C. §§ 1602(aa)(1)(A) and 1602(w). The parties stipulated that the HOEPA trigger was 10.91%. Defendant concedes in her Post Trial Memorandum that transaction charges of over $341.00 calculated as interest, would trigger the application of HOEPA. The Court finds that at least $341.00 of the charges were disguised interest.

 HOEPA requires a creditor to make certain disclosures in addition to those required by TILA. 15 U.S.C.

§ 1639(a).[9] The disclosures must be made three business days prior to the consummation of the transaction. 15 U.S.C. § 1639(b)(1). Because none of the documents signed by Plaintiff before the closing included the 15 U.S.C § 1639(a) disclosures, Plaintiff violated HOEPA.

### Damages Pursuant to TILA and HOEPA

 Plaintiff requests the Court award damages for the TILA violations pursuant to 15 U.S.C. § 1640(a)(2)(A)(iii).[10] The Court was impressed by Defendant's testimony. The Court finds that Defendant did not intend to take advantage of Plaintiff by failing to inform Plaintiff of the disclosures mandated by TILA. The Court finds that Defendant's violation of TILA was unintentional. Defendant and Plaintiff intended for Plaintiff's home to be refinanced in a relative's name within sixty days which would have enabled Plaintiff to repay Defendant timely. Mr. Evans, Plaintiff and Defendant acted quickly in order to save Plaintiff's home. Furthermore, the evidence established that Plain-

9. 15 U.S.C. § 1639(a) provides as follows:
(a) Disclosures
(1)Specific disclosures In addition to other disclosures required under this subchapter, for each mortgage referred to in section 1602(aa) of this title, the creditor shall provide the following disclosures in conspicuous type size:
(A) "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application."
(B) "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan."
(1) Annual percentage rate
In addition to the disclosures required under paragraph (1), the creditor shall disclose—
(B) in the case of any other credit transaction, [subsection (A) refers to credit cards] the annual percentage rate of the loan, the amount of the regular monthly payment, a

statement that the interest rate and monthly payment may increase, and the amount of the maximum monthly payment, based on the maximum interest rate allowed pursuant to section 3806 of Title 12.
15 U.S.C. § 1639.

10. (a) Individual or class action for damages; amount of award; factors determining amount of award Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D of E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(2)(A)(iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000.
15 U.S.C. § 1640.

tiff knew the transaction constituted a mortgage and Plaintiff agreed to the mortgage in good faith. Therefore, the Court finds it appropriate to award Plaintiff $200.00 in damages.[11]

■ Plaintiff requests the Court award damages for the HOEPA violation pursuant to 15 U.S.C. § 1640(a)(4).[12] Under HOEPA Plaintiff is merely entitled to actual damages. Plaintiff's actual damages amount to the $500.00 brokerage fee paid to Mr. Evans.

***Attorney's Fees pursuant to TILA***

■ Additionally, Plaintiff requests approximately $6,000.00 in attorney's fees pursuant to 15 U.S.C. § 1640(a)(3) as a further consequence for Defendant's violation of TILA. The Court can exercise discretion when awarding attorney's fees and costs for a TILA disclosure violation. *Leathers v. Toyota–Volvo*, 824 F.Supp. 155, 159 (C.D.Ill.1993). An award of attorney's fees "which greatly exceeds the

amount of damages at stake 'requires strong support from the circumstances of the particular case.'" *Id.* (quoting *In re Pine*, 705 F.2d 936, 938–39 (7th Cir.1983)) (citing and distinguishing *Mirabal v. Gen. Motors Acceptance Corp.* 576 F.2d 729 (7th Cir.1978)(per curiam), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978); *see also Earl v. Beaulieu*, 620 F.2d 101, 103 (5th Cir.1980) (awarding attorney's fees equal to the damage award)). The Court finds that the circumstances of this case do not support an award of attorney's fees which greatly exceeds the amount of damages. The Court finds it appropriate to award Plaintiff $1,000.00 for attorney's fees.

***Counts IV and V–Rescission Pursuant to TILA and HOEPA***

■ Plaintiff alleges in Count IV and V of the amended complaint that she has the right to rescind the transaction pursuant to 15 U.S.C. § 1635.[13] Section

11. The Court can impose damages once ·for multiple disclosure violations within a single transaction. 15 U.S.C. § 1640(g); *Jackson v. Columbus Dodge, Inc.*, 676 F.2d 120, 121 (5th Cir.1982) (citations omitted); *Aquino v. Public Fin. Consumer Disc. Co.*, 606 F.Supp. 504, 510 (E.D.Pa.1985).

12. (a) Individual or class action for damages; amount of award; factors determining amount of award (4) in the case of a failure to comply with any requirement under section 1639 of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material.
15 U.S.C. § 1640.

13. Section 1635 provides as follows:
(a) Disclosure of obligor's right to rescind
Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be

retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section. (b)When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by opera-

1635 mandates that a lender provide a borrower with notice of the borrower's right to rescind the transaction. *Id.* If the notice is properly tendered to the borrower, the borrower can notify the lender of his intent to rescind until midnight of the third business day following the consummation of the transaction. *Id.* If, as in this case, the borrower does not receive proper notice of the right to rescind the transaction, the borrower can timely notify the lender of his intent to rescind within three years of the date of consummation of the transaction. 15 U.S.C. § 1635(f). Plaintiff timely notified Defendant of her intent to rescind the transaction in the amended complaint, which was filed within three years of the consummation of the transaction.

▮▮▮▮ Defendant's actions in this case do not offend the Court's conscience. Therefore, an equitable solution must be reached when implementing Plaintiff's rescission of the transaction. *See Quenzer v. Advanta Mortgage Corp. USA,* 288 B.R. 884, 888 (D.Kan.2003) (citing *Rachbach v. Cogswell,* 547 F.2d 502, 505 (10th Cir. 1976)). In *Quenzer,* the Court found that "[e]ven though the defendant violated TILA, automatically relegating its entire claim to unsecured status under these circumstances would be completely inequitable and would exact a penalty entirely disproportionate to its offense." *Id.* at 889. The same principle applies to Plaintiff's rescission of the transaction with De-

fendant. The Court's discretion permits it to require Plaintiff to repay the principal of the loan to Defendant in exchange for Defendant tendering the deed to Plaintiff. *See id.; Williams v. Gelt Fin. Corp.,* 237 B.R. 590, 599 (E.D.Pa.1999); 15 U.S.C. § 1635(b).

Defendant will have a lien against Plaintiff's property, as described hereafter, for $17,098.37. The Court calculated this figure by reducing $18,798.37,[14] the principal amount of the loan, by: 1) $200.00 in damages for the TILA disclosure violation; 2) the $500.00 brokerage fee paid to Mr. Evans; and 3) $1,000.00 for attorney's fees.

### Count VI—Criminal Usury

▮▮▮▮ Finally, Plaintiff alleges that Defendant committed criminal usury because she charged an interest rate of at least 33.66%. Section 687.071 of the Florida Statutes provides a statutory remedy to a borrower against a lender who has made a criminally usurious loan. Criminal usury is the willful and knowing charge or receipt of interest in excess of 25% per annum. FLA. STAT. § 687.071(2). The civil penalty for a violation of the statute is the forfeiture of the entire principal amount. FLA. STAT. § 687.071(7). Assuming arguendo that Plaintiff charged Defendant an interest rate in excess of 25%, the Court must determine whether Plaintiff did so willfully and knowingly. "[U]sury is largely a matter of intent, and is not fully determined by the fact that the lender

---

tion of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor

shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.... The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.
15 U.S.C. § 1635.

**14.** Plaintiff is not responsible for the $1,201.63 in fees and charges associated with the loan. 15 U.S.C. § 1635(b).

actually receives more than law permits, but is determined by existence of a corrupt purpose in the lender's mind to get more than legal interest for the money lent." *Dixon v. Sharp,* 276 So.2d 817, 820 (Fla. 1973) (citations omitted). Additionally, "the question of intent is to be gathered from the circumstances surrounding the entire transaction." *Id.* at 821.

The Plaintiff did not prove Defendant exhibited corrupt intent when extending the loan to Plaintiff. In fact, the Court finds Defendant exhibited quite the opposite intent. Defendant extended the loan to prevent Plaintiff's mortgagee from foreclosing on Plaintiff's home. The Court does not find that Defendant willfully and knowingly charged Plaintiff an unlawful interest rate. Defendant did not commit criminal usury when extending the loan to Plaintiff.

### CONCLUSION

The Defendant did not violate Plaintiff's discharge injunction. The parties agree that Defendant's loan to Plaintiff qualifies as a secured debt. Plaintiff did not provide sufficient evidence to prove Defendant violated the Florida Deceptive and Unfair Trade Practices Act. Defendant committed disclosure violations pursuant to TILA and HOEPA. The Court will permit Plaintiff to rescind the transaction pursuant to TILA and HOEPA. However, Defendant will retain her lien against Plaintiff's home located at 278 North Wateredge Drive, Jacksonville, Florida 32211 and more particularly described as:

LOT 2, BLOCK2, EXCEPT THE PART DESCRIBED IN ORDER OF TAKING RECORDED IN OFFICIAL RECORDS VOLUME 2436, PAGE 1130, RIVIERA TERRACE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 25, PAGES 79 AND 79A, OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA.

The final judgment issued by this Court based on these Findings and Conclusions of Law will constitute a lien on the aforementioned property effective October 3, 2003, the date Plaintiff delivered the deed to Defendant. Finally, the Court finds Defendant lacked the corrupt intent necessary to commit criminal usury pursuant to the Florida Statutes. The Court will enter a separate judgment consistent with these Findings of Fact and Conclusions of Law.

### *JUDGMENT*

This proceeding came before the Court upon a complaint filed by Plaintiff, Evelyn R. Robertson, alleging Defendant, Darlene Strickland, violated the chapter 7 discharge injunction, the Truth in Lending Act, the Florida Deceptive and Unfair Trade Practices Act, the Home Ownership and Equity Protection Act of 1994 and the Florida usury law. Upon Findings of Fact and Conclusions of Law separately entered, it is

**ADJUDGED:**

1. Judgment is entered in favor of Defendant, Darlene Strickland, and against Plaintiff, Evelyn R. Robertson, as to Count I.

2. Judgment is entered in favor of Defendant, Darlene Strickland, and against Plaintiff, Evelyn R. Robertson, as to Count II.

3. Judgment is entered in favor of Plaintiff, Evelyn R. Robertson, and against Defendant, Darlene Strickland, as to Count III. The Court awards Plaintiff $200.00 in damages pursuant to 15 U.S.C. § 1640(a)(2)(A)(iii) and $1,000.00 in attorney's fees pursuant to 15 U.S.C. § 1640(a)(3).

4. Judgment is entered in favor of Plaintiff, Evelyn R. Robertson, and against

Defendant, Darlene Strickland, as to that portion of Count V which relates to HOE-PA disclosure violations. The Court awards Plaintiff $500.00 in damages pursuant to 15 U.S.C. § 1640(a)(4).

5. Judgment is entered in favor of Plaintiff, Evelyn R. Robertson, and against Defendant, Darlene Strickland, as to Count IV and that portion of Count V, which relates to rescission. Upon recordation of this judgment the deed recorded in Book: 11997; page: 1533 is null and void and has no force and effect. Defendant will retain her lien in the amount of $17,098.37 against the home located at 278 North Wateredge Drive, Jacksonville, Florida 32211 and more particularly described as:

> LOT 2, BLOCK2, EXCEPT THE PART DESCRIBED IN ORDER OF TAKING RECORDED IN OFFICIAL RECORDS VOLUME 2436, PAGE 1130, RIVIERA TERRACE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 25, PAGES 79 AND 79A, OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA.

The lien created by this judgment is in full force and effect until the lien is paid in full and the balance will accrue interest at 3.90%. Such lien became effective October 3, 2003, the date Plaintiff delivered the warranty deed to Defendant.

6. Judgment is entered in favor of Defendant, Darlene Strickland, and against Plaintiff, Evelyn R. Robertson, as to Count VI.