Stephen L. **BRYANT** et al., Plaintiffs,

v.

**MORTGAGE CAPITAL RESOURCE CORPORATION** et al.,
Defendants.

No. 1:00–CV–0671–BBM.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 14, 2002.

Franklin R. Nix, Law Offices of Franklin R. Nix, Atlanta, GA, Dennis Stewart, Andrew W. Hutton, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, for Plaintiffs.

Thomas R. Johnson, Joseph Leibowicz, Kirkpatrick & Lockhart, LLP, Pittsburgh, PA, T. Edward Malpass, Attorney at Law, Irvine, CA, Carol V. Clark, Scott H. Michalove, McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC, Roswell, GA, Sallie G. Smylie, Kirkland & Ellis, Chicago, IL, for Defendants.

## ORDER

MARTIN, District Judge.

This putative class action, arising under, *inter alia*, the Truth in Lending Act ("TILA"), is currently before the court on defendants' motion to dismiss the second amended complaint [Doc. No. 38–1]; plaintiffs' motion to extend time to respond to the defendants' motion to dismiss [Doc. No. 40–1]; defendants' motion for a protective order staying discovery [Doc. No. 42–1]; plaintiffs' motion to extend the class certification deadline [Doc. No. 45–1]; plaintiffs' motion to exceed the page limitations [Doc. No. 46–1]; and defendants' motion to suspend the requirements of Local Rule 7.1(D) [Doc. No. 50–1].

### I. *Background*

#### A. *Factual Background*

Plaintiffs bring this action stating that they are members of a putative class[1] seeking relief against their mortgage lender, Mortgage Capital Resource ("MCR").[2] Plaintiffs allege MCR engaged in predatory lending practices in violation of state and federal law. Defendants Residential Funding Corporation ("RFC") and Chase Manhattan Bank (as Indenture Trustee in care of RFC)[3] purchased and otherwise acquired a large number of MCR-originat-

1. No class has been certified in the current action. Rather, plaintiffs' motion seeking an extension of the ninety (90) day class certification deadline is presently before the court. Plaintiffs describe the potential "class" as:

   All persons who obtained from MCR, between October 1, 1995 and the present date, a closed-end home mortgage loan (whether now existing, or paid off through refinancing or foreclosure) that satisfied the [ ] loan criteria stated in 15 U.S.C. §§ 1602(aa)(1)(A) and (B), whereby (i) mandatory [ ] disclosures were withheld from the borrowers pursuant to the fraudulent scheme alleged herein, and (ii) the loan was purchased or otherwise assigned to the Defendant–Assignees.

*Pls.' Opp.to Mot. to Dismiss* at 4–5 n. 5. The court also notes that it includes plaintiffs' description of the potential class solely for the purpose of providing a detailed account of the parties involved and the nature of the claims at issue.

2. MCR is a named defendant in this action but is not party to the motions currently before this court for consideration.

3. Liability against Chase Manhattan Bank is predicated solely upon its status as "Indenture Trustee" for RFC. In an effort to simplify the discussion, the court will refer only to RFC in discussing the joint motions filed by RFC and Chase Manhattan Bank.

ed high cost, high interest loans thereby, allegedly, incurring liability as assignees under TILA (as amended by the Home Ownership and Equity Protection Act of 1994 ("HOEPA")). *See* 15 U.S.C. § 1641(d)(1).[4]

### 1. *MCR's Alleged Fraudulent Scheme*

Plaintiffs assert that MCR engaged in a predatory lending scheme by issuing HOEPA loans[5] to consumers with good overall credit without complying with the disclosures provisions laid out in TILA. These high cost second mortgage loans permitted homeowners to borrow money against the equity in their homes under a closed-end credit transaction characterized by unusually high interest rates and/or upfront transaction fees. Because they typically yield a high return and involve little risk to the holder of the loan, HOEPA loans are easily transferrable in the secondary market.

To attract potential borrowers, plaintiffs allege that MCR contacted homeowners by mail with brochures promoting low cost, low interest loans. Plaintiffs contend that MCR targeted consumers with positive credit and encouraged them to complete loan applications over the phone. Plaintiffs further contend MCR would thereafter execute a "bait and switch" whereby MCR would hurry borrowers through the closing and substitute high cost, high interest loans for the more favorable loans originally applied for by plaintiffs. Plaintiffs assert that MCR's practices violate HOEPA insofar as the company failed to timely disclose information required under the Act.[6] In particular, plaintiffs submit that, by hurrying loan applicants through the closing process, MCR violated 15 U.S.C. § 1639(b)(1), which mandates that disclosures under HOEPA "shall not be given less than 3 business days prior to consummation of the transaction." According to plaintiffs, such disclosure was not provided until the time of closing.

In addition, plaintiffs allege that, in an attempt to conceal its wrongdoing, MCR falsified closing documents so as to reflect that the mandatory disclosures were timely provided to plaintiffs. Plaintiffs contend that MCR's scheme denied plaintiffs the protections provided by TILA, including the mandatory "cooling off" period designed to enable unsuspecting consumers to recognize and avoid the predatory features of high cost, high interest loans.[7]

4. HOEPA, as a 1994 amendment to TILA, provides additional truth-in-lending disclosure requirements applicable to closed-end home equity loans characterized by high interest rates and/or up-front transaction fees. *See* 1 Howard J. Alperin & Roland F. Chase, *Consumer Law: Sales Practices & Credit Regulation,* § 311 (Supp.2001) [hereinafter Alperin & Chase].

5. As set out in 15 U.S.C. § 1602(aa)(1), a HOEPA loan is "a consumer credit transaction, secured by the consumer's principal dwelling, which has an annual percentage rate more than ten percentage points higher than comparable Treasury securities, *or* charges points and fees at or before closing totaling $400 or eight percent of the total loan amount, whichever is greater." Alperin & Chase, *supra* note 3, § 329.5. In light of the various exclusions provided in the act, it is evident that Congress was targeting its new disclosure provisions toward high rate, high fee home equity loans typically issued by finance companies or second mortgage lenders.

6. The disclosure of information in connection with the issuance of HOEPA loans is set forth in 15 U.S.C. § 1639.

7. Plaintiffs also contend that MCR withheld "good faith estimates" of settlement costs in an attempt to conceal the high cost of its credit; to prevent comparison shopping; and to cover up its wholesale violation of consumer protection provisions. Such good faith estimates are required under the Real Estate Settlement Protection Act ("RESPA").

### 2. Assignee Defendants: RFC & Chase Manhattan

RFC's involvement in the present action is tied to its purchase and acquisition of a large number of the MCR-originated HOEPA loans.[8] Under the federal truth-in-lending laws, civil actions brought against a creditor may, with limited exceptions, be maintained against an assignee. 15 U.S.C. § 1641(d)(1). Relying on this provision and the alleged violations committed by MCR, plaintiffs seek to impose liability upon RFC based solely upon its acquisition of MCR's high cost mortgages in the secondary market.[9]

### B. Procedural Background

Plaintiffs initiated this action in March 2000 with the filing of their complaint against MCR, RFC, and Chase Manhattan Bank alleging violations of 15 U.S.C. § 1639 (HOEPA). In their original Complaint, plaintiffs alleged that MCR's violations of HOEPA rendered MCR liable for damages under 15 U.S.C. § 1640(a)(4) and subjected RFC and Chase Manhattan Bank to assignee liability pursuant to 15 U.S.C. §§ 1641(d)(1) & (2). A few weeks later, plaintiffs filed their first amended complaint [Doc. No. 3–1] alleging additional causes of action under state and federal law, including the Federal Racketeer Influenced and Corrupt Practices Act ("RICO"), state RICO laws, and various state common law causes of action.[10] Thereafter, MCR filed a petition for bankruptcy under Chapter 11 of the Bankrupt-

cy Code in the Bankruptcy Court for the Central District of California. Based upon MCR's filing of bankruptcy, this court, on February 22, 2001, entered an Order [Doc. No. 31–2] staying the present action pursuant to the automatic stay provisions of 11 U.S.C. § 362. In May 2001, the presiding bankruptcy court lifted the section 362 stay. Plaintiffs immediately filed a motion to lift the stay previously entered by this court [Doc. No. 32–1]. Plaintiffs' motion was granted by the court on June 28, 2001 [Doc. No. 33–1].

On July 27, 2001, plaintiffs filed their second amended complaint [Doc. No. 34–1] asserting that they are representatives of a class of individuals and alleging that MCR, RFC, and Chase Manhattan Bank are liable for the following: (1) acts which violate TILA (as amended by HOEPA); (2) acts which violate Georgia RICO law; and (3) acts constituting common law fraud.[11] RFC has moved to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6) [Doc. No. 38–1].

## II. Discussion

### A. Motion to Dismiss

#### 1. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Linder v.*

---

**8.** Plaintiffs assert that RFC consciously disregarded MCR's failure to provide the required TILA disclosures, as well as MCR's practice of false-dating of disclosure documents that were ultimately provided to its customers at closing.

**9.** Other than alleging that RFC was willfully blind to the unlawful practices engaged in by MCR, plaintiffs do not aver that RFC committed any independent violations of state or federal law.

**10.** Plaintiffs' federal and state RICO claims were dismissed without prejudice by this court's Order dated July 6, 2000 [Doc. No. 19–1].

**11.** Plaintiffs also assert that RFC violated RESPA, Regulation X (24 C.F.R. § 3500), and Regulation Z (12 C.F.R. § 226), however, they do not specifically seek damages under these disclosure provisions.

*Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983).

### 2. *Truth–in–Lending Act*

#### a. *Section 1641(b)*

■ The court will first address the question of whether, in a case involving a rescindable contract, a writing acknowledging receipt of the disclosures required under 15 U.S.C. § 1639 constitutes "conclusive proof" of compliance with the act as provided for in section 1641(b).[12] RFC asserts that plaintiffs' signatures attesting to their receipt of the loan documents three days prior to closing constitutes conclusive proof that plaintiffs were provided the disclosure mandated by section 1639, such that a subsequent assignee could rely upon them. RFC argues that, because plaintiffs' claims are grounded solely upon allegations relating to disclosures which were not timely delivered and were falsely

dated, it must be true that when plaintiffs knowingly signed misdated loan documents they, in effect, provided RFC with an absolute defense to their claims of assignee liability. Plaintiffs counter that RFC's reliance upon the "conclusive proof" provision of section 1641(b) is misplaced as it is inapplicable to rescindable transactions. Instead, plaintiffs assert that the "rebuttable presumption" provision found in section 1635(c) more appropriately governs the present dispute because that section was intended to apply to all loans subject to the right of rescission.

As noted, the evidentiary effect of a signed disclosure statement is addressed in two sections of TILA, 15 U.S.C. §§ 1641(b) and 1635(c).[13] The question regarding the appropriate application of these provisions can be stated as follows: whether, in cases involving a rescindable transaction, plaintiffs' signed acknowledgments confirming delivery of the required disclosures under TILA constitute "conclusive proof" of compliance with the act as provided in section 1641(b) or merely creates a "rebuttable presumption" as provided in section 1635(c).[14]

---

**12.** Section 1641(b), styled "Proof of compliance with statutory provisions," states:

> Except as provided in Section 1635(c) of this title, in any action or proceeding by or against any subsequent assignee of the original creditor without knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgment of receipt by a person to whom a statement is required to be given pursuant to this subchapter shall be *conclusive proof* of the delivery thereof and, except as provided in subsection (a) of this section, of compliance with this part. This section does not affect the rights of the obligor in any action against the original creditor.

15 U.S.C. § 1641(b) (emphasis added).

**13.** 15 U.S.C. § 1635 governs the rights of consumers entering into credit transactions in which a security interest is retained in property used as the consumer's principal dwelling, including the loans protected by HOEPA.

This section operates in conjunction with 15 U.S.C. § 1639, which contains the disclosure requirements associated with the issuing of HOEPA loans, to provide consumers with the right to rescind credit transactions when their lenders fail to comply with the Act's disclosure provisions. However, section 1635(c) also provides:

> Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a *rebuttable presumption* of delivery thereof.

15 U.S.C. § 1635(c) (emphasis added).

**14.** Although the transaction appears to be subject to the right of rescission, the plaintiffs are not seeking rescission.

Pointing to the plain language of section 1641(b), plaintiffs argue that Congress was attempting to establish a framework whereby all transactions subject to the right of rescission would be governed by the more relaxed evidentiary standard of section 1635(c).[15] Conversely, RFC contends that, because plaintiffs do not seek rescission under section 1635, but instead seek damages under sections 1640 and 1641, they cannot invoke the lesser evidentiary standard provided under section 1635(c).[16]

■ Upon an extensive review of the parties' arguments, the court is persuaded that section 1641(b)'s "conclusive proof" standard is inapplicable to the rescindable contracts which are the subject of this proceeding.[17] As noted previously, Congress explicitly excepted transactions subject to the operation of section 1635(c)

from the "conclusive proof" standard enunciated in section 1641(b). In so doing, Congress further extended the heightened degree of protection that has long been afforded to rescindable transactions.[18] Moreover, an examination of the statutory scheme indicates that, by excepting transactions falling under section 1635(c) from the reach of section 1641(b), Congress intended to limit the already limited protections provided by TILA to assignees.[19]

■ The court is persuaded that neither the plain language of the provisions at issue, nor the legislative history evince an intention by Congress to tie the operation of these provisions to the fortuitous determinations of individual borrowers to seek rescission of a contract.[20] Accordingly, the court finds that the "conclusive proof" standard found in section 1641(b) is not applicable to plaintiffs' claims and therefore does not operate as an absolute defense against plaintiffs claims in the present action.[21]

---

**15.** Specifically, plaintiffs direct this court to the language excepting section 1635(c) from the operation of section 1641(b). *See* 15 U.S.C. 1641(b) ("Except as provided in Section 1635(c) of this title, . . . .")

**16.** The parties do not dispute that the HOEPA loans at issue are subject to the right of rescission through the operation of 15 U.S.C. § 1641(d).

**17.** *See* Alperin & Chase, *supra* note 3, § 454 (stating that section 1641(b) does not apply to transactions subject to the right of rescission).

**18.** In recounting the purpose of TILA's remedial provisions as originally enacted, the Fifth Circuit in *Sellers* noted: "The purpose of making creditors civilly liable is to force disclosure of credit terms. The purpose of according borrowers [entering into specified transactions] a right of rescission is broader; not only is it designed to compel disclosure, but it also serves to blunt unscrupulous sales tactics by giving homeowners a means to unburden themselves of security interests exacted by such tactics." *Sellers v. Wollman*, 510 F.2d 119, 123 (5th Cir.1975) (citing 114 Cong. Rec. 1611 (1968) (remarks of Cong. Cahill)).

**19.** This conclusion is supported by the policies underlying both TILA and HOEPA. By

assigning liability to those who acquire mortgages on the secondary market in 1641(a), Congress was attempting to force assignees to police their own industry. However, in 1641(b), Congress limited the scope of assignee liability where the assignee had no knowledge of violations of consumer protection laws by the original lender and where such violations were not apparent on the face of the disclosure document.

**20.** RFC asserts that applying a different evidentiary weight to written acknowledgments in actions seeking rescission and actions seeking monetary damages makes sense because actions for rescission simply return the parties to the status quo while the imposition of monetary damages is much more onerous on the assignee. While recognizing the merit of this argument, it nevertheless remains that there is no indication that Congress intended to tie the applicable evidentiary standard to the nature of the particular relief sought.

**21.** The court's conclusion is consistent with the longstanding rule that "the Truth–in–Lending Act is to be construed liberally in favor of the consumer." *Sellers*, 510 F.2d at 122.

### b. *Section 1641(d)(1)*

■ The court must next address whether, as plaintiffs assert, 15 U.S.C. § 1641(d)(1) renders assignees jointly and severally liable for a creditor's independent violations of state law. In pertinent part, this section states: "[A]ny person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title *shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage ....*" 15 U.S.C. § 1641(d)(1). Plaintiffs, in Counts II and III of their Complaint, *inter alia*, that MCR engaged in common law fraud and other unlawful practices in violation state RICO laws. Plaintiffs further contend that, as an assignee of HOEPA loans, RFC is jointly and severally liable with MCR under 15 U.S.C. § 1641(d)(1) because RFC knowingly and voluntarily stepped into the shoes of MCR upon acquiring MCR-originated HOEPA loans. Plaintiffs further aver that section 1641(d)(1) provides them with the affirmative right to assert claims against RFC based solely upon MCR's independent and allegedly unlawful conduct in connection with the issuance of plaintiffs' loans. RFC counters that section 1641(d)(1) merely eliminates an assignee's ability to assert the holder-in-due-course defense.

■ Based on the plain language of the statute, however, it is clear that Congress intended to subject assignees of HOEPA loans to a more expansive standard of liability than is normally applied under TILA.[22] Support for this conclusion can also be drawn from the legislative history of HOEPA, which reveals that, through the enactment of HOEPA, Congress intended to force the "High Cost Mortgage" market to police itself. *See* S.Rep. No. 103–169, at 28 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1881, 1912. To that end, Congress eliminated the holder-in-due-course defense to assignees of high cost mortgages and rendered them subject to "all claims and defenses, whether under [TILA] or other law, that could [otherwise] be raised against the original lender." *See id.* A review of the legislative history further indicates that section 1641(d)(1) was intended to mirror the "Holder Rule" [23] promulgated by the Federal Trade Commission ("FTC") relating to "consumer installment" loans, *see id.*, which pro-

---

22. With regard to non-HOEPA transactions, an assignee is liable only for violations that are "apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). Therefore, the primary effect of section 1641(d)(1) is to render assignees of HOEPA loans liable for truth-in-lending violations regardless of whether they were apparent on the face of the loan document. Congress, however, did limit assignee liability by providing that an assignee could escape liability upon establishing "by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure disbursements that the mortgage was a [HOEPA] mortgage referred to in section 1602(aa) of this title." Moreover, Congress included a provision limiting the amount of damages a plaintiff could obtain in an action founded upon 15 U.S.C. § 1641(d)(1).

23. The holder-in-due-course principle enables a creditor-assignee to "assert his right to be paid by the consumer despite misrepresentation, breach of warranty or contract, or even fraud on the part of the seller, and despite the fact that the consumer's debt was generated by the sale." *Riggs v. Anthony Auto Sales, Inc.*, 32 F.Supp.2d 411, 416 n. 12 (W.D.La. 1998) (citing 40 Fed.Reg. 53,506, 53,507 (Nov. 18, 1975)). A more detailed review of the FTC's position regarding the abrogation of the holder-in-due-course rule reveals that "[t]he aim[ ] of the [FTC's] initiative[ ] was not only the literal preservation of claims and defenses, but also the establishment of a broader, market-based incentive for creditors to inquire into the merchants from whom they purchase consumer installment paper and to refuse to deal with those merchants whose conduct would subject the creditor to potential claims or defenses." *Dissenting Letter from Commissioner Mary Azcuenaga of the FTC to William W. Wiles, Board of Governors*

vides, in part, that "[a]ny holder of [a] consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services ...." 16 C.F.R. § 433.2. Through the adoption of this rule, the FTC abrogated the holder-in-due-course principle in much the same fashion as Congress abrogated the rule through the enactment of HOEPA. The courts in this circuit having considered the question have held that section 433.2 preserves a consumer's independent claims and defenses against assignees of HOEPA loans. *See, e.g., Eachen v. Scott Housing Sys., Inc.,* 630 F.Supp. 162, 164–65 (M.D.Ala.1986); *see also Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703, 708 (11th Cir.1998).[24]

Therefore, in light of the foregoing, the court finds that Congress intended to place the increased burden of inquiring into the legitimacy of the lending practices engaged in by the original lender upon the assignees of HOEPA loans. In so doing, Congress sought to "halt the flow of capital" to original lenders who engaged in predatory lending practices harmful to consumers by providing for assignee liability under HOEPA. S.Rep. No. 103–169, at

28 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1881, 1912. Such an approach was intended to encourage investors in the secondary market for HOEPA loans to more carefully scrutinize the backgrounds and qualifications of those with whom they choose to do business. Moreover, Congress' approach allocates to the assignee the cost associated with the misconduct of the original lender in such instances where the assignee fails to inquire into or otherwise discover the deceptive and unlawful practices engaged in by the original lender.[25] It is against this backdrop that the court finds that section 1641(d)(1) provides plaintiffs with the affirmative right to assert claims against RFC based solely upon MCR's independent and allegedly unlawful conduct in connection with the issuance of plaintiffs' loans. Accordingly, the court will proceed to address RFC's contention that HOEPA violates the Tenth Amendment by infringing on the powers reserved by the States. *See* U.S. CONST. amend. X.

### c. *Tenth Amendment*

■ In its motion to dismiss, RFC asserts that section 1641(d)(1) amounts to an unconstitutional usurpation of the states'

---

*of Federal Reserve System,* FTC Today (Washington Regulatory Reporting Associates), February 2, 1996.

**24.** In *Ellis,* the Eleventh Circuit addressed the scope of assignee liability under section 1641(a) of TILA. Examining section 433.2 in light of section 1641(a)'s mandate that violations be "apparent on the face of the disclosure statement," the *Ellis* court found that, although the FTC's "Holder Rule" empowers plaintiffs to raise affirmative claims and defenses against assignees, plaintiffs bringing claims which fall under 1641(a) are nevertheless limited by that section's requirement that violations be apparent on the face of the disclosure document. Therefore, while rejecting the plaintiffs' claims against the assignee on the grounds that plaintiffs could not satisfy section 1641(a), the Eleventh Circuit implicitly recognized that the FTC's "Holder Rule"

does more than simply eliminate the holder-in-due-course defense.

**25.** Congress was, however, concerned with the burdens it was placing on assignees of HOEPA loans. In conjunction with providing for a limitation on damages, Congress also sought to ensure that purchasers of HOEPA loans on the secondary market were given notice of their potential liability. As a result, "[a]ny person who sells or otherwise assigns a[n] [HOEPA mortgage] shall include a prominent notice of potential liability ...." 15 U.S.C. § 1641(d)(4). Even so, it is clear Congress deemed assignees of HOEPA loans to be in the best position to absorb or recover the loss associated with the predatory lending practices of original lenders. *See Riggs,* 32 F.Supp.2d at 416 (detailing the proper allocation of the cost of a seller's misconduct under the FTC's "Holder Rule")

power to legislate the appropriate scope of assignee liability in violation of the Tenth Amendment. RFC first states that the powers not expressly delegated to Congress were necessarily reserved by the states. RFC argues therefore that, to the extent section 1641(d)(1) can be interpreted as creating assignee liability where such liability does not exist under Georgia law, the court must find that Congress has violated the Tenth Amendment by dictating the content of state law.

RFC's arguments do not persuade this court. As the Supreme Court has previously held, TILA constitutes a valid exercise of Congress' authority under the Commerce Clause. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 377, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). That HOEPA alters the rules relating to assignee liability with respect to high cost mortgage has no bearing on this conclusion.[26] Oddly, RFC makes no mention of Congress' authority under the Commerce Clause. Rather, relying upon *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), RFC asserts that Congress, by rendering assignees liable under state law for the acts of the original lender, has, in effect, revised state law and rendered the states mere instruments of the federal government. RFC's reliance on *New York v. United States* is

misguided. That case, involving the Low-Level Radioactive Waste Policy Amendments Act of 1985 ("LRWPAA"), 42 U.S.C. § 2021b et. seq., held that "while Congress has substantial power under the Constitution to encourage States to provide for the disposal of the radioactive waste generated within their borders, the Constitution does not confer upon Congress the ability simply to compel the States to do so." *Id.* at 150, 112 S.Ct. 2408.[27] Here, Congress has not attempted to coerce the states into carrying out a federal interest, nor, as defendants assert, has Congress attempted to commandeer, rewrite, or otherwise alter state assignment law. Rather, Congress has provided an avenue, under federal law, by which a plaintiff can seek relief from an assignee of a HOEPA loan for all claims (including state law claims) which the plaintiff could have brought against the original creditor. Accordingly, defendants' motion to dismiss is hereby DENIED.[28]

### 3. *Statute of Limitations*

▮ In its final argument in support of its motion to dismiss, RFC asserts that plaintiffs' claims accruing prior to March 15, 1999 (one year prior to the filing of the original complaint on March 15, 2000) are barred by TILA's statute of limitations. 15 U.S.C. § 1641(e). Furthermore, RFC

**26.** Since the original enactment of TILA, *see* 1968 U.S.C.C.A.N. 176, 189–90, Congress has provided for assignee liability in large part to further its purpose of assuring "meaningful disclosure of credit terms." It was this original exercise of authority that was scrutinized by the *Mourning* Court. In this court's view, it follows that Congress' narrow extension of liability to assignees of HOEPA loans in an attempt to encourage the secondary market to rid itself of those engaging in predatory lending practices is also a valid exercise of Congress' authority to regulate interstate commerce.

**27.** The Court went on to characterize the dispute in *New York v. United States* as concern-

ing "the circumstances under which Congress may use the States as implements of regulation; that is, whether Congress may direct or otherwise motivate the States to regulate in a particular field or a particular way." 505 U.S. at 162, 112 S.Ct. 2408. As an initial matter, which is readily applicable to the case at bar, the Court stated, "Congress may not simply 'commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.'" *Id.*

**28.** The remainder of RFC's contentions involve questions of fact not appropriately addressed at this stage.

argues that plaintiffs have failed to allege sufficient facts to support the equitable tolling of TILA's one-year statute of limitations period. Plaintiffs counter that, because MCR fraudulently concealed its unlawful conduct, the court should equitably toll TILA's statute of limitations period.

■■■ Equitable tolling is the doctrine which allows plaintiffs to sue after the expiration of the applicable statute of limitations, provided they have been prevented from doing so due to inequitable circumstances.[29] *See Ellis,* 160 F.3d at 706 (citing *Bailey,* 88 U.S. at 347, 21 Wall. 342). To qualify for the protections afforded by equitable tolling, plaintiffs must show: (1) RFC engaged in a course of conduct designed to conceal evidence of its alleged wrongdoing; (2) plaintiffs were not on actual or constructive notice of that evidence; and (3) plaintiffs exercised due diligence. *See Pedraza v. United Guaranty Corp.,* 114 F.Supp.2d 1347, 1354 (S.D.Ga.2000) (examining equitable tolling in the context of RESPA).

To satisfy the first element, plaintiffs allege that: (1) MCR failed to adequately disclose information required under TILA until the closing of the loan, and (2) MCR subsequently engaged in a scheme to conceal its TILA violations by false-dating the plaintiffs' loan applications. Even if the court were willing to assume that plaintiffs have sufficiently alleged that MCR engaged in a course of conduct designed to

conceal evidence of its alleged wrongdoing, plaintiffs' arguments in favor of tolling must fail.[30] In their complaint, plaintiffs assert:

> The false-dating practices of MCR are readily apparent on the face of the Plaintiffs' unsigned copies of their loan documents. These unsigned copies are identical to the other set of loan documents received by Fed Ex or actually executed in face-to-face closings and all of the false dates appearing on the loan document disclosures were reinserted by MCR document preparers. None of the dates appearing on these unsigned document copies were inserted by any of the Plaintiffs.

*Plaintiffs' Second Amended Complaint* at 23. Although plaintiffs may have sufficiently alleged that MCR failed to comply with the disclosure requirements as they relate to section 1639(b)'s "cooling off" period, plaintiffs' remaining allegations lead the court to conclude plaintiffs possessed actual or constructive knowledge of MCR's practice of falsely dating the closing contracts. Plaintiffs own complaint reflects that plaintiffs knew or should have known that the loan documents provided by MCR were not properly dated.

■■■ Finally, the court is not convinced that plaintiffs exercised due diligence in pursuit of their claim in the present action. As this circuit recently noted, "[t]he actual exercise of diligence is irrelevant because the standard is an objective one." *Mor-*

---

**29.** The purpose underlying equitable tolling is to prevent defendants from "concealing a fraud, or ... committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations...." *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874).

**30.** The court remains doubtful that MCR's conduct constitutes fraudulent concealment. In their complaint, plaintiffs maintain that they were provided with falsely dated loan documents at closing. Because the misdated

documents were provided to plaintiffs at closing, by definition, MCR did not "conceal" the alleged false-dating scheme. *See Merriam–Webster's Collegiate Dictionary* 237 (10th ed.2000) (defining "conceal" as placing out of sight or preventing the disclosure or recognition of an object). Upon plaintiffs' signing of the falsely dated closing documents, the court concludes that plaintiffs were, at minimum, imparted with constructive knowledge that something was awry with MCR's lending practices.

*ton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 836 (11th Cir.1999). The Eleventh Circuit stated that "in deciding whether the statute should be tolled, it must be determined whether a 'reasonably diligent plaintiff' would have discovered the fraud." [31] *Id.* (citing *Sterlin v. Biomune Systems*, 154 F.3d 1191, 1201 (10th Cir.1998)). Applying this language to the present facts and *assuming arguendo* that plaintiffs did not possess actual or constructive knowledge of MCR's false-dating practices, plaintiffs have failed to sufficiently allege facts from which this court could conclude that plaintiffs acted with reasonable diligence. Instead, the facts as alleged in plaintiffs' complaint establish that plaintiffs could and should have discovered that something was amiss with MCR's lending practices. Accordingly, this court concludes that plaintiffs are not entitled to the equitable tolling of TILA's one year statute of limitations. Therefore, those claims presently before this court which accrued prior to March 15, 1999, are hereby barred by section 1641(e) of TILA.[32] In light of the foregoing, RFC's motion to dismiss is hereby GRANTED in part and DENIED in part. Plaintiffs have forty (40) days from the entry of this Order in which to move for class certification in accordance Local Rule 23.1.

### III. *Summary*

Defendants' motion to dismiss [Doc. No. 38–1] is hereby GRANTED in part and DENIED in part. Defendants' motion for a protective order staying discovery [Doc. No. 42–1] is hereby DENIED. Defendants' motion to suspend the requirements of Local Rule 7.1(D) [Doc. No. 50–1] is hereby GRANTED. Plaintiffs' motions to extend time to respond to the defendants' motion to dismiss [Doc. No. 40–1] and to exceed the page limitations [Doc. No. 46–1] are each hereby GRANTED. Plaintiffs' motion to extend the class certification deadline [Doc. No. 45–1] is hereby GRANTED until forty (40) days from the entry of this Order.

---

31. It is well established that "[b]oth the diligent and the non-diligent plaintiff are protected from the expiration of claims the factual basis for which was shrouded by the veil of fraudulent concealment." *Morton's Market*, 198 F.3d at 836. However, the law cannot protect plaintiffs "from the expiration of claims the factual basis for which they could and should have discovered through the exercise of due diligence." *Id.*

32. A review of plaintiffs' complaint reveals that, of the four MCR customers party to the present action, only one failed to satisfy the statute of limitations requirement. As a result, RFC's motion to dismiss with respect to that claim, brought by Diane Davis, is hereby GRANTED. Because plaintiffs have not yet filed their motion for class certification and because the facts surrounding the claims of the putative class members may differ from those alleged in plaintiffs' second amended complaint, the court is unwilling to find at this time that all potential claims accruing before the aforementioned date are barred by the statute of limitations.