Betty COOPER et al., Plaintiffs,

v.

**FIRST GOVERNMENT MORTGAGE
AND INVESTORS CORPORATION
et al., Defendants.**

Civil Action No. 00–0536 (RMU).

United States District Court,
District of Columbia.

Nov. 4, 2002.

Patrick A. Malone, Stein, Mitchell And Mezines, Jean M. Constantine Davis, Nina F. Simon, AARP Foundation Litigation, Washington, DC, for Plaintiff.

S. Ricardo Narvaiz, Fairfax, VA, for Defendants Equitable Mortgage Group and Darren Soodak.

Martin B. Ellis, J. Steven Lovejoy, David R. Breschi, Shumaker Williams, P.C. Towson, MD, for Defendants Chase Title and Mitchell Hyatt.

James M. Burns, Nihar R. Mohanty, Vorys Sater Seymour and Pease LLP, Washington, DC, for Defendant Altegra Credit Corporation.

Nathan I. Finkelstein, Finkelstein & Horvitz, Bethesda, MD, for Defendant First Government Mortgage and Investors Corporation.

## MEMORANDUM OPINION

URBINA, District Judge.

Denying the Plaintiffs' Motion for Partial Summary Judgment; Denying Defendant Altegra's Motion for Summary Judgment; Denying as Moot the Plaintiffs' Motion to Strike

## I. INTRODUCTION

The plaintiffs bring this action against various mortgage brokers, mortgage assignees, and settlement agents. The plaintiffs allege predatory and fraudulent lending tactics in violation of the District of Columbia Consumer Protection Procedures Act (CPPA), D.C.Code § 28–3901 et seq., the District of Columbia Mortgage Lender and Broker Act (MLBA), D.C.Code § 26–1101 et seq. (formerly D.C.Code § 26–1001), the Federal Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq., TILA's corollary District of Columbia statute, D.C.Code § 28–3301, and the Home Ownership and Equity Protection Act ("HOEPA"), codified as amendments to numerous sections of TILA. The case is before the court on the plaintiffs' motion for partial summary judgment, defendant Altegra Credit Corporation's (Altegra) motion for summary judgment, and the plaintiffs' motion to strike the errata sheet and second deposition of Marci Simmons, defendant Chase Title's (Chase) corporate designee. For the reasons that follow, the court denies both motions for summary judgment and denies as moot the motion to strike.

## II. BACKGROUND

The plaintiffs are a group of homeowners who refinanced their homes with defendant First Government Mortgage and Investors Corporation (First Government) as their loan provider. Corrected Fifth Am. Compl. (Compl.) ¶ 1. The plaintiffs allege that First Government engaged in a pattern of targeting low-income homeowners and inducing them to enter illegal, high-cost mortgage loans. *Id.* ¶ 3. In addition to First Mortgage, the defendants relevant to the pending motions are Altegra, a mortgage assignee, and Chase, a settlement agent. *Id.* ¶¶ 17–22.

One of the plaintiffs, Mrs. Josephine E. Curtis, age 79, bought her home with her husband in 1951. *Id.* ¶ 60. Mr. Curtis passed away in 1991 and Mrs. Curtis passed away at some point after the filing of the complaint. *Id.*; Altegra Undisp. Facts ¶ 1. Regina Williams, Mrs. Curtis' granddaughter, was added to the deed of the house without Mrs. Curtis' knowledge in 1998. Compl. ¶ 61. On January 29, 1999, Mrs. Curtis and Ms. Williams entered into a mortgage loan (Curtis loan) for $61,500.00 with First Government. Pls.' Undisp. Facts ¶ 1. Chase acted as First Government's settlement agent for the Curtis loan. *Id.* ¶ 2. The points and fees calculated for this loan, pursuant to HOEPA, total $4,413.25, or 7.7% of the total loan amount. *Id.* ¶¶ 19 20; Pls.' Ex. 9.[1] The loan settlement statement lists various fees associated with the loan including fees for flood certification, a walk-through affidavit, and a judgment report fee. Pls.' Ex. 3.

According to Ms. Williams, neither she nor her grandmother read the documents they received at the loan closing. Williams Dep. at 100–02, 207–09. After the loan closing, Mrs. Curtis and Ms. Williams returned to Mrs. Curtis' home and Mrs. Curtis placed the loan documents in her lockbox. *Id.* Once provided by the

---

1. The plaintiffs' and defendants' exhibits to which the court refers accompany the parties' summary judgment submissions.

plaintiffs in discovery, the loan documents included only one copy of the Notice of Right to Cancel form (Notice form) and an acknowledgment signed by Mrs. Curtis that she had received two copies of the Notice form. Altegra Exs. 15, 17.

Altegra bought the Curtis loan on or about March 25, 1999, thereby becoming the mortgage assignee. Compl. ¶ 4. On December 6, 2000, Mrs. Curtis sent a notice of rescission to First Government and Altegra, pursuant to TILA. Compl. ¶ 68.

The plaintiffs filed their original complaint in this court on March 13, 2000. After filing several amended complaints, the plaintiffs filed a Corrected Fifth Amended Complaint (the complaint). Defendant Altegra filed a cross claim against defendant Chase and another defendant. The parties have settled the majority of the claims advanced in the pleadings.

The case is before the court on the plaintiffs' motion for partial summary judgment, defendant Altegra's motion for summary judgment, and the plaintiffs' motion to strike Marci Simmons' (defendant Chase's corporate designee) second deposition and errata sheet. In their motion for partial summary judgment, the plaintiffs argue that because the Curtis loan is subject to HOEPA, Altegra is liable for all violations of law committed by First Government. In contrast, Altegra argues that it is not liable as the loan assignee. Altegra further argues that it is not liable for rescission of the Curtis loan. Finally, Altegra argues that it is not liable pursuant to the CPPA. The court denies all of these motions.

### III. ANALYSIS

#### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to in-terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are material, a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than the mere existence of a scintilla of evidence in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific

facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. The Court Denies the Plaintiffs' and Defendant Altegra's Motions for Summary Judgment on the HOEPA Claims in Count Six

In count six, the plaintiffs claim that the Curtis loan qualifies as a HOEPA loan and assert that Altegra is liable as an assignee of the Curtis loan for all violations of law asserted against the original lender, First Government. Both Altegra and Mrs. Curtis move for summary judgment on count six. The court denies the motions for the following reasons.

#### 1. Legal Standards

##### a) TILA and HOEPA

In 1968, Congress enacted TILA, a federal statute that governs the terms and conditions of consumer credit by, *inter alia*, requiring lenders to disclose certain details about loans and loan fees and costs. 15 U.S.C. § 1601 *et seq.; In re Crisomia*, 2002 WL 31202722, at *3 (Bankr.E.D.Pa. Sept. 13, 2002). Congress intended TILA to assure a meaningful disclosure of credit terms so that consumers will not be misled as to the costs of financing. *Id.*

Faced with increasing reports of abusive practices in home mortgage lending, Congress enacted HOEPA in 1994 as an amendment to TILA. Pub.L. 103–325 (amending TILA at 15 U.S.C. §§ 1601–02, 1604, 1610, 1639–41, 1648); *see also In re Jackson*, 245 B.R. 23, 25 (Bankr.E.D.Pa. 2000); *Vandenbroeck v. Contimortgage Corp.*, 53 F.Supp.2d 965, 968 (W.D.Mich. 1999). HOEPA requires lenders to provide borrowers with additional disclosures,

in conspicuous type size, with respect to certain home mortgages. 15 U.S.C. § 1639(a)(1). Congress intended HOEPA to result in greater disclosure to borrowers involved in high cost loans and to stop certain loan terms and practices. 15 U.S.C. § 1639; *In re Crisomia*, 2002 WL 31202722, at *3. In order to implement TILA and HOEPA, the Board of Governors of the Federal Reserve System introduced Regulation Z. 12 C.F.R. § 226.1 *et seq.; Lopez v. Delta Funding Corp.*, 1998 WL 1537755, at * 7 (E.D.N.Y. Dec. 23, 1998).

HOEPA defines certain mortgages as high cost when the mortgage reaches a points and fees trigger. 15 U.S.C. § 1602(aa); 12 C.F.R. § 226.32(a). More specifically, a high cost or HOEPA loan is:

1) a consumer credit transaction

2) with a creditor

3) that is secured by the consumer's principal dwelling

4) and is a second or subordinate residential mortgage, not a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open credit plan

5) and that satisfies either of the following two tests:

 (a) the annual percentage rate (APR) of interest for the loan transaction exceeds certain levels; or

 (b) the total "points and fees" payable by the borrower at or before closing will exceed the greater of (i) 8% of the total loan amount; or (ii) $400.00.

15 U.S.C. § 1602(aa); *Lopez*, 1998 WL 1537755, at * 5. A mortgage loan that satisfies these requirements is a HOEPA loan and is therefore subject to HOEPA's requirements or protections. *Id.* HOEPA's requirements include, for example, certain disclosures, prohibition of an in-

creased rate of interest upon default, prohibition of pre-payment penalty, and assignee liability for violations of the lender. 15 U.S.C. §§ 1639, 1641.

### b) Assignee Liability for HOEPA Loans

TILA protects borrowers from predatory lending tactics by providing a cause of action against creditors and assignees of creditors who engage in such tactics. 15 U.S.C. § 1601 *et seq.* TILA imposes two different standards of care for assignees. 15 U.S.C. § 1641. Assignee liability regarding non-HOEPA transactions under TILA is limited to violations that are apparent on the face of the disclosure statement. 15 U.S.C. § 1641(a), (e); *Bryant v. Mortgage Capital Res. Corp.,* 197 F.Supp.2d 1357 n. 22 (N.D.Ga.2002) (quoting 15 U.S.C. § 1641(a)); *In re Murray,* 239 B.R. 728, 733 (Bkrtcy.E.D.Pa.1999). Congress has provided a definition of apparent on the face:

> For the purposes of this section, a violation is apparent on the face of the disclosure statement if—(A) the disclosure can be determined to be incomplete or inaccurate by a *comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement;* or (B) the disclosure statement does not use the terms or format required to be used by this subchapter.

15 U.S.C. § 1641(e)(2) (emphasis added).

In contrast to the apparent on the face standard, Congress intended to subject high cost mortgage (HOEPA loan) assignees to a more expansive standard of liability than provided pursuant to TILA. *Bryant,* 197 F.Supp.2d at 1364. The legislative history of HOEPA demonstrates that Congress enacted HOEPA to force the high cost mortgage market to police itself. *Id.* (citing S.Rep. No. 103–169, at

28 (1993), *reprinted in* 1994 U.S.C.C.A.N. 1881, 1912, *and* 1993 WL 444316 (HOEPA Leg. Hist.)). Accordingly, Congress made assignees subject to all claims and defenses, whether under [TILA] or other law, that could be raised against the original lender. HOEPA Leg. Hist. at *11; *see also In re Rodrigues,* 278 B.R. 683, 688 (Bankr.D.R.I.2002); *In re Murray,* 239 B.R. at 733; *Vandenbroeck,* 53 F.Supp.2d at 968. The provision for assignee liability for HOEPA loans, in all cases except rescission, provides as follows:

> Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, by a *preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements* that the mortgage was a mortgage referred to in section 1602(aa) of this title.

15 U.S.C. § 1641(d)(1) (emphasis added).

In sum, HOEPA subjects mortgage assignees to increased liability for HOEPA loans. 15 U.S.C. § 1641(d)(1). For HOEPA loans, liability is not limited to violations *apparent on the face of loan documents,* as detailed in section 1641(a), but rather liability exists unless the assignee proves that a *reasonable person exercising ordinary due diligence could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements* that the loan was a HOEPA loan, as detailed in section 1641(d)(1). 15 U.S.C. § 1641(a), (d)(1).

Courts have interpreted section 1641(d)(1)'s due diligence requirement as placing the burden on an assignee to prove, by a preponderance of the evidence, that the assignee *could not reasonably determine, could not determine,* or *did not know* that the loan was a HOEPA loan.[2] *In re Rodrigues,* 278 B.R. at 689; *In re Murray,* 239 B.R. at 733; *Jackson,* 245 B.R. at 33.

While the D.C. Circuit has not defined due diligence in the context of section 1641(d)(1), it has discussed due diligence in the context of the statute of limitations for tort liability.

■ *Richards v. Mileski,* 662 F.2d 65, 71 (D.C.Cir.1981). Evaluating whether a person acted with due diligence, the court considered whether the person did what a reasonable person would have done in his situation given the same information. *Id.* A definition of ordinary due diligence is that degree of care which [people] of common prudence generally exercise in their affairs, in the country and age in which they live. Black's Law Dictionary (6th ed.1990) at 457. In determining how to apply section 1641(d)(1)'s due diligence requirement, this court compares subsections (a), (d), and (e), defined *supra.* 15 U.S.C. § 1641. The comparison demonstrates that ordinary due diligence must require at least more than a mere review of relevant loan documents and disbursements. Thus, this court defines ordinary due diligence in the HOEPA context as requiring (1) a review of the documentation required by TILA, the itemization of the amount financed, and other disclosure of disbursements; (2) an analysis of these items; and (3) whatever further inquiry is objectively reasonable given the results of the analysis. *See Richards,* 662 F.2d at 71; *In re Rodrigues,* 278 B.R. at 689; *In re Murray,* 239 B.R. at 733; *Jackson,* 245 B.R. at 33.

### 2. Analysis

#### a) Defendant Altegra Has Failed to Prove That It Is Not Liable Pursuant to HOEPA

Altegra argues that the court should grant summary judgment in its favor for the plaintiffs' HOEPA claims as alleged in count six. Altegra's Mot. for Summ. J. at 17–19; Compl. Count 6. In count six, the plaintiffs allege that Altegra, as the assignee of a HOEPA loan, is subject to all claims and defenses that Mrs. Curtis could claim against the creditor of the loan, First Government. Compl. ¶¶ 136–37. Despite substantial case law to the contrary,[3] Altegra contends that, to be liable under HOEPA, the HOEPA status of the loan must be *apparent on the face of the loan documents* to a reasonable person exercising due diligence. Altegra's Mot. for Summ. J. at 17–19 (citing 15 U.S.C. § 1641(d)(1)) (emphasis added). Though Altegra states that section 1641(d)(1) is the applicable law, Altegra conflates section 1641(d)(1) with the more assignee-friendly section 1641(a) that requires violations to be apparent on the face of the loan documents. *Id.* Altegra also cites to irrelevant cases that apply section 1641(a) in non-HOEPA situations. *Id.* The plaintiffs pointed out this legal error in their opposition. Pls.' Opp'n at 13.

---

**2.** Though the parties make numerous arguments regarding due diligence in their submissions regarding Altegra's Motion for Summary Judgment, and though cases have described due diligence, neither party has provided case law to support their use of this critical term. *E.g.* Pls.' Opp'n at 18–20, 22; Altegra's Mot. for Summ. J. at 18; Altegra's Reply at 8.

**3.** *In re Rodrigues,* 278 B.R. at 689; *Jackson,* 245 B.R. at 33; *In re Murray,* 239 B.R. at 733–34; *Vandenbroeck,* 53 F.Supp.2d at 968.

In its reply, Altegra concedes that the proper standard for liability for a HOEPA violation is section 1641(d)(1).[4] Altegra's Reply at 7. Altegra then argues that, as an assignee of the loan, it is not liable for the plaintiffs' HOEPA claim because a reasonable person exercising due diligence could not have determined, based on the loan documentation, that the Curtis loan was a HOEPA loan.[5] *Id.* at 7. Altegra never defines due diligence, however. *Id.* In addition, Altegra's corporate designee, David King, had almost no knowledge of HOEPA and its requirements. Pls.' Opp'n at 18–19; King Dep. at 59–64.

 Given that Altegra's corporate designee had a poor understanding of HOEPA, Altegra has not convinced the court that it could have conducted the type of search that a reasonable person would have done in his situation given the same information. *Richards*, 662 F.2d at 71; King Dep. 59–64. For Altegra to prevail on its motion for summary judgment on the HOEPA claims, it must demonstrate, by a preponderance of the evidence and without material facts in dispute, that it could not have reasonably determined that the mortgage was a loan covered by the HOEPA amendments. 15 U.S.C. § 1641(d)(1); *Diamond*, 43 F.3d at 1540. To meet the burden required by this defense at the summary judgment phase, Altegra must demonstrate with undisputed facts that a person with knowledge of the HOEPA requirements evaluated and analyzed the loan documents and disbursements. 15 U.S.C. § 1641(d)(1); *Diamond*, 43 F.3d at 1540; *In re Rodrigues*, 278 B.R. at 689. Because Altegra first defined the standard incorrectly, has not defined due diligence, and has not presented compelling and undisputed evidence that it exercised due diligence in reviewing the Curtis loan for HOEPA violations and status, Altegra has not met the burden set forth in section 1641(d)(1) to exempt itself from liability. *Richards*, 662 F.2d at 71; *In re Rodrigues*, 278 B.R. at 689. Consequently, the court cannot grant summary judgment to Altegra on Mrs. Curtis' HOEPA claim. 15 U.S.C. 1641(d)(1); *Diamond*, 43 F.3d at 1540.

### b) The Points and Fees for the Curtis Loan Do Not, At the Summary Judgment Phase, Demonstrate That the Curtis Loan Is a HOEPA Loan

The court now considers whether undisputed material facts support a judgment that the Curtis loan is a HOEPA loan. The plaintiffs seek summary judgment for count six, arguing that there are four finance charges incurred for the Curtis loan that First Government and Altegra failed to include in their points and fees calculations. Pls.' Mot. for Summ. J. at 7–8. The plaintiffs assert that if these four finance charges are included in the Curtis loan calculation, the points and fees will be greater than 8% of the total loan amount and the loan will fall under HOEPA's pro-

---

4. The plaintiff argues that Altegra cannot raise the affirmative defense of section 1641(d) because it failed to raise this defense in its answer. Pls.' Opp'n at 12. Other than a few references to Rule 8(c), the plaintiffs cite to no case law in support of this argument. *Id.* at 11–13.

5. Altegra relies on the testimony of Ms. Renuart, the plaintiff's HOEPA expert, in arguing that no due diligence examination of the Curtis loan documents would have revealed that

the loan was subject to HOEPA. Altegra's Reply at 7–8; *see* Pls.' Opp'n at 15–16. Ms. Renuart, however, testified that the Curtis Settlement Statement, by itself, raised suspicion because several fees were unfamiliar to her. Renuart Dep. I at 85. Ms. Renuart also testified that she did not rely on depositions in determining that the Curtis loan qualifies as a HOEPA loan. Renuart Dep. I at 82–83, 101, 131; Renuart Dep. II at 45; Renuart Report ¶¶ 11–14.

tections. *Id.;* 15 U.S.C. § 1602(aa). The court now outlines the statutes defining finance charges in the HOEPA context, explains the HOEPA calculations, and then evaluates the parties' arguments.

Finance charges are the cost of consumer credit shown as a dollar amount. 15 U.S.C. § 1605(a); 12 C.F.R. § 226.4(a). Finance charges include charges imposed

6. Regulation Z defines the term finance charge in 12 C.F.R. § 226.4(a):
The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.
(1) Charges by third parties. The finance charge includes fees and amounts charged by someone other than the creditor, unless otherwise excluded under this section, if the creditor:
(i) requires the use of a third party as a condition of or an incident to the extension of credit, even if the consumer can choose the third party; or
(ii) retains a portion of the third-party charge, to the extent of the portion retained.
(2) Special rule; closing agent charges. Fees charged by a third party that conducts the loan closing (such as a settlement agent, attorney, or escrow or title company) are finance charges only if the creditor:
(i) Requires the particular services for which the consumer is charged;
(ii) Requires the imposition of the charge; or
(iii) Retains a portion of the third-party charge, to the extent of the portion retained.
(3) Special rule; mortgage broker fees. Fees charged by a mortgage broker (including fees paid by the consumer directly to the broker or to the creditor for delivery to the broker) are finance charges even if the creditor does not require the consumer to use a mortgage broker and even if the creditor does not retain any portion of the charge.

7. Regulation Z provides examples of finance charges in 12 C.F.R. § 226.4(b):

directly or indirectly by the creditor on the consumer as a condition of the extension of credit. *Id.* Regulation Z, 12 C.F.R. § 226.1, *et seq.*, which implements TILA and HOEPA, defines points and fees as including the following finance charges:
(i) All items required to be disclosed under § 226.4(a) [6] and 226.4(b),[7] except interest or the time-price differential;

The finance charge includes the following types of charges, except for charges specifically excluded by paragraphs (c) through (e) of this section:
(1) Interest, time price differential, and any amount payable under an add-on or discount system of additional charges.
(2) Service, transaction, activity, and carrying charges, including any charge imposed on a checking or other transaction account to the extent that the charge exceeds the charge for a similar account without a credit feature.
(3) Points, loan fees, assumption fees, finder's fees, and similar charges.
(4) Appraisal, investigation, and credit report fees.
(5) Premiums or other charges for any guarantee or insurance protecting the creditor against the consumer's default or other credit loss.
(6) Charges imposed on a creditor by another person for purchasing or accepting a consumer's obligation, if the consumer is required to pay the charges in cash, as an addition to the obligation, or as a deduction from the proceeds of the obligation.
(7) Premiums or other charges for credit life, accident, health, or loss-of income insurance, written in connection with a credit transaction.
(8) Premiums or other charges for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property, written in connection with a credit transaction.
(9) Discounts for the purpose of inducing payment by a means other than the use of credit.
(10) Debt cancellation fees. Charges or premiums paid for debt cancellation coverage written in connection with a credit transaction, whether or not the debt cancellation coverage is insurance under applicable law.

(ii) All compensation paid to mortgage brokers;

(iii) All items listed in § 226.4(c)(7) [8] (other than amounts held for future payment of taxes) unless the charge is reasonable, the creditor receives no direct or indirect compensation in connection with the charge, and the charge is not paid to an affiliate of the creditor; and

(iv) Premiums or other charges for credit life, accident, health, or loss-of-income insurance, or debt-cancellation coverage ... that provides for cancellation of all or part of the consumer's liability in the event of the loss of life, health, or income or in the case of accident, written in connection with the credit transaction.

12 C.F.R. § 226.32(b)(1) (footnotes added); *Lopez*, 1998 WL 1537755, at *7. Thus, HOEPA points and fees include certain finance charges imposed by creditors and third parties, fees paid to mortgage brokers, and real estate fees unless the real estate fees are reasonable and compensate neither the creditor nor the creditor's affiliate. 12 C.F.R. § 226.32(b)(1). Real estate fees include fees for title examinations, preparing loan-related documents, credit reports, inspections, and flood hazard determinations. 12 C.F.R. § 226.4(c)(7). The determination of what items to include in the points and fees calculation is critical to evaluating whether the total points and fees of a loan exceed the HOEPA threshold.

Altegra used the following points and fees in the calculation of the HOEPA trigger:

| Altegra's Points and Fees | Amount |
|---|---|
| Underwriting fee to First Government | $ 365.00 |
| Broker fee to Equitable Mortgage | $3,418.25 |
| Settlement or closing fee to Chase Title | $ 295.00 |
| Document preparation to First Government | $ 335.00 |
| **Total Points and Fees** | **$4,413.25** |

Pls.' Undisp. Facts ¶¶ 19–20; Pls.' Ex. 9. In contrast, the plaintiffs allege that the points and fees calculation by Altegra on the Curtis loan failed to include four finance charges:

| Plaintiffs' *Additional* Points and Fees | Amount |
|---|---|
| Flood certification fee | $ 20.00 |
| Walk-through affidavit fee | $ 85.00 |
| Judgment report fee | $ 64.00 |
| Excess interest payment | $ 105.90 |
| **Total *Additional* Points and Fees** | **$ 274.90** |

Pls.' Mot. for Summ. J. at 7.

Calculating the HOEPA trigger requires the following calculations:

(1) principal amount of the loan—total points and fees = total loan amount

(2) total loan amount × .08 = HOEPA trigger

15 U.S.C. § 1602(aa); 12 C.F.R. 226.32; Official Staff Commentary, 12 C.F.R. Pt. 226, Supp. I ¶ 32(a)(1)(ii); *Lopez*, 1998 WL 1537755, at * 7–8. The loan is a HOEPA loan if the total points and fees are greater

**8.** Regulation Z describes real estate related fees in 12 C.F.R. § 226.4(c)(7):

The following fees in a transaction secured by real property or in a residential mortgage transaction, if the fees are bona fide and reasonable in amount:

(i) Fees for title examination, abstract of title, title insurance, property survey, and similar purposes.

(ii) Fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents.

(iii) Notary and credit report fees.

(iv) Property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest infestation or flood hazard determinations.

(v) Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge.

than the HOEPA trigger, 8% of the total loan amount. 15 U.S.C. § 1602(aa).

In this case, the parties agree that the principal amount of the loan is $61,500.00. Pls.' Undisp. Facts ¶¶ 1, 18, 20; Altegra Disp. Facts; Chase Disp. Fact ¶¶ 1, 18, 20; Pls.' Ex. 3. As demonstrated by the fee calculation form that Altegra used to evaluate the Curtis loan, Altegra calculated the total points and fees as $4,413.25 .and the total loan amount as $57,086.75. *Id.;* Pl's Ex. 9; King Dep. 59–63. Thus, the HOEPA calculation for the Curtis loan is as follows:

(1) principal amount of the loan, $61,-500.00—total points and fees, $4,413.25 = total loan amount, $57,086.75

(2) total loan amount, $57,086.75 × .08 = HOEPA trigger, $4,566.94.

(3) total points and fees, $4,413.25 *are not greater than* HOEPA trigger, $4,566.94

*Id.; Lopez,* 1998 WL 1537755, at * 7–8. If the points and fees are greater than 8% of the principal loan amount, then the loan is a HOEPA loan. 15 U.S.C. § 1602(aa)(1)(B)(i). The smallest amount that, once added to the Altegra points and fees, renders the Curtis loan a HOEPA loan is $143.00.[9] Thus, if the plaintiffs four additional points and fees, totaling $274.90, were included in the HOEPA calculation, the Curtis loan would qualify for HOEPA's protections.

### i) Flood Certification Fees

The court now examines whether First Government and later Altegra properly excluded the four charges at issue from the points and fees calculations that determine whether a loan is a covered by HOEPA. Regarding the flood certification fee, Mrs. Curtis paid to First Government $20.00 for a flood hazard determination. Pls.' Mot. for Summ. J. at 8–9; Pls.' Ex. 3. The plaintiffs argue that the Curtis loan HOEPA points and fees should include the flood hazard determination fee. *Id.*

A flood hazard inspection fee paid to assess the value or condition of the property is *not* included in the HOEPA points and fees calculation when the service is performed *prior to closing, the fee is reasonable and bona fide, and when the fee is not paid to the creditor.* 15 U.S.C. § 1605(e)(5); 12 C.F.R. §§ 226.4(c)(7)(iv), 226.32(b)(1). Fees performed prior to closing are excluded because Congress intended to exclude charges imposed solely in connection with the initial decision to grant credit. Official Staff Commentary, 12 C.F.R. Pt. 226, Supp. I ¶ 4(c)(6). Accordingly, if the service is performed after closing, or if the charge is unreasonable, not bona fide, or paid to the creditor, then it will be included in the HOEPA points and fees calculation. *Id.*

 The plaintiffs first argue that because the Curtis loan Settlement Statement lists the payee of the $20.00 flood certification fee as First Government, the creditor, the HOEPA points and fees must

9. The calculations for adding $143.00 to Altegra's listed points and fees are as follows: Total points and fees = 4413.25 + 143.00 = 4,556.25. The total loan amount = 61,-500.00–4,556.25 = 56,943.75. The HOEPA trigger = 56,943.75 × .08 = 4555.50. The total points and fees are greater than the HOEPA trigger amount. In contrast, adding $142.00 to Altegra's listed points and fees, the calculations are as follows: Total points and fees = 4413.25 + 142.00 = 4,555.25. The total loan amount = 61,500.00–4,555.25.00 = 56,944.75. The HOEPA trigger = 56,-944.75 × .08 = 4555.58. The total points and fees are not greater that the HOEPA trigger amount, thus adding $142.00, or any smaller amount, to the Curtis loan points and fees calculation would not render the Curtis loan subject to HOEPA.

include this charge. Pls.' Mot. for Summ. J. at 8–9; Pls.' Ex. 3. Chase and Altegra both argue that, though the fee went to First Government, First Government simply passed the fee directly to the flood certification company. Altegra's Opp'n at 10–11; Chase Opp'n at 20; Lilienfeld Dep. at 66. Because this material fact is in dispute, the court cannot grant summary judgment on this issue. *Greene,* 164 F.3d at 675.

The plaintiffs also provide an alternative argument, based on the fact that the Standard Flood Hazard Determination form for the Curtis Loan is dated February 1, 1999, three days after the loan closing. Pls.' Mot. for Summ. J. at 8–9; Pls.' Ex. 10. The plaintiffs argue that the date on the form indicates that the certification occurred post-closing. *Id.* Chase counters that the determination is merely an invoice for services previously performed.[10] Chase Disp. Facts ¶ 23. The form includes the flood zone information, whether insurance is necessary, and the invoice amount. Pls.' Ex. 10. The plaintiffs offer no evidence that explains the form, or even the general procedures for obtaining the certification. Without more evidence from the plaintiffs, the court cannot conclude that the flood certification occurred after the closing of the loan. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505 (stating that the summary judgment standard mirrors the standard for a directed verdict).

### ii) Walk–Through Affidavit Fee

■ Similarly, the plaintiffs fail to prevail on their argument that the Curtis loan points and fees should include the $85.00 walk-through affidavit fee. The Curtis loan Settlement Statement includes a fee paid for a Walk Through Affidavit. Pls.' Ex. 3. The plaintiffs argue that the fee was not bona fide because the Settlement Statement lists no payee, no actual affidavit exists, and seven months passed before the loan was recorded. Pls.' Mot. for Summ. J. at 9–11. Though the plaintiff's legal support of this argument is limited, the plaintiffs seem to argue that the walk-through affidavit charge is a real estate fee that should not be excluded from the finance charge because it is not reasonable or bona fide. Pls.' Mot. for Summ. J. at 9–11, endnote 19.

The declaration of Gwen Turner demonstrates a possibility that the walk-through affidavit fee could be legitimate. Turner Decl. Gwen Turner, the president of Executive Abstracting, filed loan documents with the District of Columbia Recorder of Deeds (D.C.Recorder) for Chase for a fee of $25.00 per document. Turner Decl. ¶¶ 1–4. Ms. Turner stated that Chase hired her to walk the Curtis loan recording documents through the D.C. Recorder for filing. *Id.* ¶¶ 6, 11. Ms. Turner explained that the initial check from Chase for $45.00 (payable to the District of Columbia) did not pay for all of the required filing fees, so she had to pay an additional $80.00 to the District of Columbia on behalf of Chase. *Id.* ¶ 10. Ms. Turner also stated that during the time period of the Curtis loan, the D.C. Recorder took at least six months to record documents. *Id.* ¶ 7.

Chase's walk-through affidavit fee of $85.00 is not well-supported and may not be bona fide. However, the plaintiffs have not presented *undisputed* facts that con-

---

10. In addition, Chase included about seven pages of text discussing matters—such as settlement discussions and a class action suit involving some of the same parties—that are unrelated to this motion. Chase Opp'n at 4–11; Pls.' Reply at 17–19. The court warns the parties if any party submits a motion with substantial irrelevant commentary, the court will simply strike the entire document. *Cf. Jackson v. Finnegan,* 101 F.3d 145, 152 (D.C.Cir.1996).

vince the court that the fee is *not* bona fide. 12 C.F.R. 226.32(b)(1); *Diamond*, 43 F.3d at 1540. Consequently, the plaintiffs are not entitled to a judgment as a matter of law on this issue. *Id.*

### iii) Excess Interest

The plaintiffs ask the court to include in the HOEPA points and fees calculation a charge that is not a classic fee and does not separately appear on the [Settlement Statement]. The plaintiffs explain this fee as follows:

> The charge occurred because First Government funded Mrs. Curtis' loan and directed Chase Title to conduct the closing on Mrs. Curtis' loan prematurely on January 29, 1999, knowing that it would not timely permit Chase Title to disburse the funds to pay off her prior mortgage with Nations Credit [a second mortgage with Nations Bank on the same property].
>
> First Government refused to allow Chase to disburse the funds to pay off Mrs. Curtis' prior mortgage until February 17, 1999—fourteen days after the expiration of the 3 day right to cancel period.

Pls.' Mot. for Summ. J. at 16. Between the closing of the First Government loan (loan 2) and the payment of the old Nations Bank loan (loan 1), Mrs. Curtis incurred interest on both loans. *Id.* The plaintiffs argue that the unnecessary delay between the loan 2 closing and the loan 1 payment resulted in a fee, totaling $105.90, for 10 days of extra interest on loan 1. *Id.* Consequently, Mrs. Curtis received $105.90 less in cash that she was promised on the [Settlement Statement]. . . . *Id.*

The plaintiffs fail to explain why the extra interest cost should include 10 days' worth of interest payments, and why the delay was unreasonable or unusual. *Id.* Even the plaintiffs' expert, in her report,

does not include this expense in her list of points and fees for the Curtis loan. Renuart Report ¶¶ 10, 14. Instead, the expert only discusses this argument as an afterthought. *Id.* ¶ 16.

Moreover, despite the court's order that the plaintiffs submit endnotes providing citations to evidence and legal authorities, the plaintiffs did not add any citations to legal authorities for this subsection. Order dated Oct. 15, 2002; Pls.' Mot. for Summ. J. at 16. Before the court's order for citations, this subsection cited to one regulation, 12 C.F.R. § 226.4(a), which provides the general definition of a finance charge. *Id.* The plaintiffs, however, fail to explain how their novel argument is supported by section 226.4, or any legal authority.

 The court is not an advocate, and thus may not fill in the argument where the plaintiffs' motion fails to do so. *Cf. Tom v. Heckler*, 779 F.2d 1250, 1259–60 (7th Cir.1985) (Posner, J. dissenting) (stating that the adversarial system is the system we have, and *ad hoc* modifications which cast an appellate judge . . . in the role of *judge d'instruction* are unlikely to improve the system; they are likely, in fact, to weaken it). While the plaintiffs have presented a colorable argument, they have failed to satisfy the burden required for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### iv) The Court Denies the Plaintiffs' Motion for a Ruling on Summary Judgment that the Curtis Loan Qualifies as a HOEPA Loan

The court has ruled that it will not include in the HOEPA points and fees calculation: the $20.00 flood hazard fee, the $105.90 excess interest payment, and the $85.00 walk-through affidavit fee. Earlier, the court calculated that $143.00 is the

smallest amount of fees that would render the Curtis loan subject to HOEPA. 15 U.S.C. § 1602(aa); 12 C.R.F. § 226.32(b)(1). Thus, because the $64.00 judgment report fee is too small an amount to render the Curtis loan a HOEPA loan, the court need not evaluate the plaintiffs' argument regarding this remaining fee.

Because the court declines, at this summary judgment phase, to conclude that the Curtis loan falls under the HOEPA protections, the court cannot grant the plaintiffs' request for remedies pursuant to the alleged HOEPA violations. Consequently, the court denies the plaintiffs' motion for partial summary judgment.

## C. The Court Denies Defendant Altegra's Motion for Summary Judgment on the Rescission Claims in Count Five

Altegra moves for summary judgment on count five of the plaintiffs' complaint. This count asserts assignee liability for rescission of the plaintiffs' loans pursuant to TILA. For the following reasons, the court denies summary judgment regarding this count.

### 1. Legal Standard for Rescission

Section 1635 governs the rights of consumers entering into credit transactions in which a security interest is retained in property used as the consumer's principal dwelling, including the loans protected by HOEPA. 15 U.S.C. § 1635; *Bryant*, 197 F.Supp.2d at 1362 n. 13. In any action subject to rescission, the creditor must deliver to the lender two copies of the Notice of Right to Cancel form (Notice Form). 12 C.F.R. § 226.23(b)(1). The notice of the right to rescind must be on a separate document that identifies the transaction and must clearly and conspicuously disclose the consumer's right to rescind the transaction and the details of

that right. *Id.; Wiggins v. AVCO Fin. Servs.*, 62 F.Supp.2d 90, 93–94 (D.D.C. 1999). Under TILA, borrowers can seek rescission of loans against creditors until the later of (1) three days after the consummation of the transaction, or (2) once the creditor has delivered the information, two copies of the Notice Form, and the material disclosures required by TILA. 15 U.S.C. §§ 1635, 1639(j). If the creditor fails to provide two copies of the Notice Form, then the right to rescind the loan expires three years after the consummation of the transaction, or once the property is sold, whichever occurs first. 15 U.S.C. § 1635(f). In TILA, Congress enlarged the rescission remedy to apply against assignees as well as the original lenders. 15 U.S.C. § 1641(c).

■ Courts have construed TILA liberally in favor of borrowers. *Smith v. Fid. Consumer Discount Co.*, 898 F.2d 896, 898 (3d Cir.1990); *Wiggins*, 62 F.Supp.2d at 94. Accordingly, where a lender has violated TILA provisions, courts have imposed a standard of strict liability. *Griggs v. Provident Consumer Disc. Co.*, 680 F.2d 927, 930 (3d Cir.1982)); *In re Rodrigues*, 278 B.R. at 687. A creditor who fails to comply with TILA in any respect is liable to the consumer under the statute regardless of the nature of the violation or the creditor's intent. *Smith*, 898 F.2d at 898 (citations omitted). The Supreme Court has instructed courts to defer to the interpretation of TILA provided in 12 C.F.R. § 226, which was promulgated by the Federal Reserve Board pursuant to expansive authority granted by Congress. *Id.* (citing *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981)).

■ The borrower's written acknowledgment of receipt of the disclosures or documents required by TILA creates a

rebuttable presumption of the delivery of such items. 15 U.S.C. § 1635(c); *Williams v. First Gov't Mortgage & Investors Corp.*, 974 F.Supp. 17, 21 (D.D.C. 1997). To rebut this presumption, borrowers must present evidence to the contrary. *Williams v. First Gov't Mortgage & Investors Corp.*, 225 F.3d 738, 751 (D.C.Cir. 2000) (citing *Legille v. Dann*, 544 F.2d 1, 6 (D.C.Cir.1976)). The D.C. Circuit has stated:

> [a]s Dean Wigmore has explained, "the peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the (trier of fact) to reach a conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the (factfinder's) hands free from any rule." As more poetically the explanation has been put, "(p)resumptions ... may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts."

*Legille*, 544 F.2d at 6 (footnotes omitted). In the TILA context, the D.C. Circuit criticized the district court's ruling in *Williams* (though agreeing with its final decision) for shifting too strict a burden onto a TILA plaintiff who was attempting to overcome the presumption of delivery of the two copies of the Notice Form. *Williams*, 225 F.3d at 751.

### 2. Analysis

Count five of the plaintiffs' complaint states that the assignees are liable for rescission of the First Government loans and statutory damages, including attorney's fees, pursuant to 15 U.S.C. §§ 1640, 1641(a). Compl. ¶¶ 133–35. Defendant Altegra moves for summary judgment on this count. Altegra's Mot. for Summ. J. at 12. Altegra argues that the undisputed facts demonstrate that Mrs. Curtis received the required two copies of the Notice Form. *Id.* at 12–14. Altegra also argues that even if Mrs. Curtis received only one copy of the form, substantial compliance with TILA is sufficient.[11] *Id.* at 14–16.

■ Altegra contends that providing one copy of the Notice Form demonstrates substantial compliance with TILA, and therefore is sufficient. Altegra's Mot. for Summ. J. at 14–16. This argument ignores the circuit and Supreme Court case law discussed, *supra*, favoring strict compliance with TILA. *Id.; e.g.*, *Smith*, 898 F.2d at 898; *Griggs*, 680 F.2d at 930. This case-law also favors a liberal construction of TILA. Accordingly, the court will not grant summary judgment on count five based on Altegra's substantial compliance theory.

Altegra also avers that Mrs. Curtis received two copies of the Notice Form and signed an acknowledgment that she received these two copies. Altegra's Mot. for Summ. J. at 13; Altegra Exs. 15–17. Altegra further contends that the signed acknowledgment creates a rebuttable and strong presumption of delivery of two copies of the Notice Form. *Id.* at 13, 14.

■ In contrast to Altegra's argument, the case-law demonstrates that a TILA plaintiff attempting to overcome the presumption of delivery of two copies of the Notice Form faces a low burden. *Williams*, 225 F.3d at 751. Accordingly, the court determines that Ms. Williams' testimony is sufficient to overcome the

---

11. Altegra argues that as an assignee, it is not liable for attorney's fees, statutory penalties, and costs pursuant to count five. The court has not yet determined liability and thus the matter of damages and attorney's fees is premature.

presumption of delivery. *Id.;* Williams Dep. at 100–02. Ms. Williams testified that neither she nor her grandmother read the documents they received at the closing of the Curtis loan. Williams Dep. at 100–02, 207–09. Once they returned to Mrs. Curtis' home after the closing, Mrs. Curtis placed the documents from the closing in her lockbox. *Id.* Mrs. Curtis saved all of her personal documents. *Id.* Therefore, had she received two copies of the Notice Form, both would have been in her lockbox. *Id.* at 207–09. By presenting Ms. Williams' testimony, the plaintiffs have rebutted the presumption of delivery and presented more than a scintilla of evidence in support of their position. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Accordingly, as the material facts regarding the delivery of two copies of the Notice Form are in dispute, the court must deny summary judgment and submit the claims in count five to a jury. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### D. The Court Denies Defendant Altegra's Motion for Summary Judgment on the CPPA Claim

Altegra moves for summary judgment on the plaintiffs' CPPA claim, count seven. Altegra's Mot. For Summ. J. at 20. Altegra argues that there is no legal basis for derivative liability for CPPA violations. *Id.* Altegra claims that because it played no role whatsoever in First Government's loans with Plaintiffs it is not liable for the plaintiffs' CPPA claims. *Id.* Altegra assumes that the plaintiffs' count seven asserts derivative, not direct, liability against Altegra. *Id.*

■ The plaintiffs, however, argue that Altegra is *directly* liable for CPPA violations because it had a direct role in First Government's loan transaction with Mrs. Curtis. Pls.' Opp'n at 33–34; Pls.' Exs. P, Q, C, F. The complaint supports the plain-

tiffs' characterization of their claims as direct, not derivative: ... Defendant Assignees, through their actions in promoting, underwriting and ultimately funding the Plaintiffs' loans with First Government, violated the CPPA.... Compl. ¶ 139. Because material facts are in dispute, the court denies its motion for summary judgment on count seven. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### E. The Court Denies as Moot the Plaintiffs' Motion to Strike

Finally, the court turns to the plaintiffs' motion to strike. After her first deposition, Marci Simmons, Chase's corporate designee, submitted an errata sheet, making substantive changes to her first deposition. The plaintiffs then deposed Ms. Simmons a second time, to ask her about her changed testimony. The plaintiffs move to strike the errata sheet and second deposition of Ms. Simmons only for the purpose of summary judgment, but not for trial. Pls.' Reply at 6; Pls. Mot. to Strike. Because the court has not relied on the changed testimony of Ms. Simmons as provided in her errata sheet and second deposition, the plaintiffs' motion to strike no longer presents a live controversy. Accordingly, the court denies as moot the motion to strike. *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Jud. Conf. of U.S.,* 264 F.3d 52, 55 (D.C.Cir.2001). Though the court refrains from ruling on this motion, the court clarifies that, at trial, any party may ask Ms. Simmons about her pre-errata-sheet testimony and her subsequent contradictory errata sheet and testimony.

### IV. CONCLUSION

For all these reasons, the court denies the plaintiffs' motion for partial summary judgment, defendant Altegra's motion for summary judgment, and the plaintiffs' mo-

tion to strike. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this *4th* day of November 2002.

## ORDER

DENYING THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT ALTEGRA'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT THE PLAINTIFFS' MOTION TO STRIKE

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this *4th* day of November 2002, it is

**ORDERED** that the plaintiffs' motion for partial summary judgment is **DENIED**; and it is

**FURTHER ORDERED** that defendant Altegra's motion for summary judgment is **DENIED**; and it is

**ORDERED** that the plaintiffs' motion to strike is **DENIED as moot.**

**SO ORDERED.**